35 So.2d 514

## SHORTER et al. v. SHORTER.

### 4 Div. 497.

Supreme Court of Alabama.

May 20, 1948.

————◇————

E. W. Norton, of Clayton, for appellants.

M. I. Jackson, of Clayton, for appellee.

FOSTER, Justice.

The matter controverted between the parties to this litigation is the validity of a deed executed by Tim Shorter to his daughter Gertha Ree Shorter, conveying forty-three acres of land which had been his home. He died in June 1945, leaving four children. He also had another tract of one hundred and eighteen acres. The other three children are contesting with Gertha Ree Shorter, his youngest and unmarried child, the validity of the deed on the ground of mental incapacity and undue influence. The trial court denied the claim of complainants, upheld the validity of the deed, and complainants have appealed.

■ The decedent was seventy-one to seventy-two years of age when he made the deed, dying a few weeks later. It does not appear that he made a will. He had been ill for a long time with hardening of the arteries and cancer of the prostate. The doctors were treating him. One saw him every two to four weeks. The other saw him three times before he died, but does not give the dates. But he became very ill. They were of the opinion that he did not have mental capacity at the time of the execution of the deed. They did not see him that day, and do not say when was the last time they saw him before then. There was an overwhelming array of witnesses who testified to his normal mental capacity at and about that time. The trial judge found that complainants had not met the burden of proof in that respect, and we think he was fully justified in so finding.

On the question of undue influence the material facts were that the forty-three acres of land had been his home for a long time. His wife died in 1939. His children were married and lived elsewhere, all but Gertha Ree, who had been living with them, and continued to do so after her mother died. She had been very attentive to both of them.

In 1940, the father and a son Jason Shorter were convicted of distilling, and served a term in the penitentiary but returned in 1941 or early in 1942. While he was away Gertha Ree lived on the farm and kept it going. When he returned he rented the farm and moved into a small house, too small for him and Gertha Ree both. So she moved to Clayton where she rented a room, and went back every week or so to look after her father: To do his washing, mending and cleaning. Finally, he decided to move to Clayton in 1944. Gertha Ree had no place for him, but his son Jason had a home there, and

he moved in with him not far from where Gertha Ree lived in one room. She was very attentive to his personal needs. He attended to his own business without any assistance. She had nothing to do with his business. He rented his land and had a bank account, which he attended to, and provided for Jason to draw on it. At the time of his death it was $428.10, and Jason drew it out. No complaint is here made as to its disposition. During several years before his death, he had discussed with his friends the matter of deeding the forty-three acres to Gertha Ree, because she had been so attentive to his personal needs, and had no home nor husband to care for her. He told one that he intended to deed her the land shortly before he died, and told several others of his purpose to do so. Gertha Ree is not shown to have suggested or requested it. He finally gave her his old deed, and told her to get a certain lawyer in Clayton to draw a deed to her. This she did and brought it back to him. He then had a friend to carry him to the bank. Gertha Ree did not go. His confidential banker was told about it, and that he wanted to execute a deed, and did so in his presence and acknowledged it before him as a notary. The banker says he was of normal mentality, and understood his business, and told him that he wanted to give the home place to his single daughter. He carried the deed back and gave it to Gertha Ree, and told her to have it recorded, which she did that day, some six or eight weeks before he died.

The rules of law applicable to fixing the burden and sufficiency of the proof are fully repeated in Floyd v. Green, 238 Ala. 42, 188 So. 867.

We do not think that the evidence supports the conclusion that Gertha Ree had any dominating influence over her father. The presumption was that her father was the dominating party in that situation. But if she had been shown to have been so related to him, the evidence overcomes all presumption of undue influence arising from that relation. His plan had been considered for years, and matured on consultation with friends, and without suggestion from her. It was the natural and appropriate thing to do.

She had earned it by her tender care and services. He had left one hundred and eighteen acres of land and $428.10 in the bank. He did not give all the land to her, or any of the money. We do not know the relative value of the forty-three acres compared with the balance of his estate. He did not make the deed secretly nor at a time when it stripped him of income. He wanted it to be his last transaction. He told her to record it. He had made no will of it otherwise. He was living in the home of his son Jason, who had access to his bank account. The presumptions of law never intended to deprive one of the right of a voluntary and untrammeled disposition of his own property. Hutcheson v. Bibb et al., 142 Ala. 586, 589, 38 So. 754. We think in this case the evidence shows that is exactly the situation here involved.

The decree of the trial court so holding is affirmed.

Affirmed.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.