88 So.2d 681

**Mrs. S. E. HART et al.**

v.

**The BAPTIST FOUNDATION OF ALABAMA et al.**

**4 Div. 855.**

Supreme Court of Alabama.
June 14, 1956.

Rehearing Denied July 26, 1956.

Prestwood & Prestwood, Andalusia, for appellants.

Albrittons & Rankin and Murphy & Murphy, Andalusia, for appellee Baptist Foundation of Alabama.

**634**

SPANN, Justice.

This is an appeal from a final decree of the Circuit Court of Covington County, in Equity, denying relief to complainants and dismissing their bill. The appellants, complainants below, are all the heirs except one of J. E. Hughes, deceased. The appellees, respondents below, are The Baptist Foundation of Alabama and Mrs. Julia Price, a daughter of J. E. Hughes, deceased.

The bill of complaint sought to sell the former homestead of J. E. Hughes for division. One aspect sought to set aside a deed from J. E. Hughes and wife to the wife, Laura Hughes, to the property involved on January 25, 1928, on the ground that J. E. Hughes was incompetent at the time of execution and delivery. Demurrer to this aspect was sustained. In another aspect of the bill, it was alleged that The Baptist Foundation owned a one-half undivided interest in the property, that the heirs and next of kin of J. E. Hughes owned the other one-half in certain specified shares, and prayed for a sale for division. There was a stipulation of facts between the attorneys as to this aspect; and evidence was also taken ore tenus before the trial judge, who denied relief to complainants.

The evidence before the court tended to show that J. E. Hughes married Laura Hughes in 1900. At that time, he had children by a former marriage and they, or their heirs, are the complainants, with the exception of Julia Price, one of the respondents. In 1915, J. E. Hughes and Laura Hughes deeded part of the property to Laura Hughes by an instrument which was intended to convey a life estate to her. In 1919, Laura Hughes received a purported life estate to certain lots from Julia Price and her husband, which make up the other part of the property here involved. On January 25, 1928, Laura Hughes and husband conveyed all the property, which was their homestead, to the husband, and on the same day J. E. Hughes and wife, Laura, conveyed the same property to Laura. Both conveyances were by warranty deed; they were acknowledged before the same notary; and both were filed for record on January 27, 1928, at eleven o'clock A. M. J. E. Hughes died in 1936. Laura Hughes died in November, 1951, after devising this property to The Baptist Foundation of Alabama. Complainants attack this devise, contending that the Foundation took no title; or in the alternative, that it received only an undivided one-half interest in the property.

Assignment of error No. 10 complains that the court erroneously sustained the demurrer to that aspect of the bill seeking cancellation of the deed from J. E. Hughes and wife, Laura, to Laura, dated January 25, 1928.

■ A demurrer assigning laches, the statute of limitations or prescription is permissible if such appears from the face of the bill. Pittman v. Pittman, 247 Ala. 458, 25 So.2d 26; Smith v. Hart, 259 Ala. 7, 65 So.2d 501; 13 Ala.Dig., Limitation of Actions, ⟨⟨180(2). Here the bill alleged that the deed in question was executed and recorded in 1928, nearly 26 years before the

filing of the bill of complaint, that the grantor died 18 years before suit was filed and the grantee died more than two years prior thereto. As stated in Darden v. Meadows, 259 Ala. 676, 68 So.2d 709, 712:

"'The rule of laches is well understood. It precludes relief where, as the result of delay, the original transactions have become so obscure by lapse of time or loss of evidence as to render it difficult or hazardous to do justice or danger of doing injustice. * * * This rule has application where the matter is not pressed until after the death of adverse party or material witness, or loss or destruction of the evidence that could have explained or denied the contentions made by adverse interest.'"

The action of the trial court sustaining the demurrer was correct.

Assignment of error No. 5, the only other assignment of error argued by appellants, raises the real question—whether the court erred in holding that appellants have no right, title or interest in the property.

■ We are confronted with two deeds executed between husband and wife on the same day and recorded the same day. The parties are dead, and no one testified who had firsthand knowledge of their intentions. The first and controlling principle governing courts in the construction of deeds "* * * is that the intention of the parties must be carried out if consistent with the law and with a fair interpretation of the instrument. This rule is familiarly expressed in the maxim that writings are to be upheld when possible, 'ut res magis valeat quam pereat.' Under the influence of this principle it is universally held that a liberal construction should be placed upon the language of written instruments when by so doing they may be upheld, and when otherwise the plain intention of the parties will be defeated." Dinkins v. Latham, 154 Ala. 90, 45 So. 60, 63.

And in Nettles v. Lichtman, 228 Ala. 52, 152 So. 450, 452, 91 A.L.R. 1455, this court said:

"And it is the well-settled rule that, where the language of a deed is ambiguous, the intention of the parties may be ascertained by a consideration of the surrounding circumstances existing at the time of its execution, and for this purpose the court will place itself as nearly as possible in the position of the parties when the instrument was executed. 18 Corpus Juris, p. 260. To ascertain the intent in respect to the property conveyed, reference may be had to the state of facts as they existed when the instrument was made, and to which the parties may be presumed to have had reference. 18 Corpus Juris, 280. Of course the entire instrument is to be considered, and, if it can be reasonably done, and not inconsistent with the general intent of the whole instrument, effect and meaning should be given to every clause, word, and expression, so that the deed may operate according to the intention of the parties. 18 Corpus Juris, 258. These general rules were here recognized in the recent case of Walker v. W. T. Smith Lumber Co., 226 Ala. 65, 145 So. 572, 574, where it was said: 'Deeds of bargain and sale * * * for a valuable consideration are to be construed most strongly against the grantor and in favor of the grantee, and, of course, in the matter of construction it is the duty of the court to look at the whole conveyance, the circumstances under which the contract was made, the relative position of the parties, and the purpose and object designed to be accomplished. The intention of the parties to the instrument, when clearly ascertained, is of controlling efficacy.'"

■ The lower court, as do we, was seeking to ascertain the purpose, object and intention of the parties and "'* * * for this purpose the court will place itself as nearly as possible in the position of the

parties when the instrument was executed. * * *' * * *" Williams v. Johns-Carroll Lumber Co., 238 Ala. 536, 192 So. 278, 280; 26 C.J.S., Deeds, § 92, p. 344.

Undoubtedly both J. E. and Laura Hughes believed on January 25, 1928, that Laura had deeds to a life estate in their homestead. Had that been the estate that J. E. Hughes desired to settle upon his wife, they could and would have done nothing because even if the prior deeds to Laura did not convey it, she would receive a life estate as a matter of law upon her husband's death. Evidently, they thought that it would be proper for Laura to convey her life estate to her husband and he then, in turn, would deed the homestead to her in fee simple. This is the only reasonable explanation that can be given for their actions on January 25, 1928.

Subsequent events strengthen this conclusion. Nothing in the record shows that Mr. Hughes ever sought to exercise dominion over the property after the interchange of deeds. Mrs. Julia Price, one of his daughters, testified that her father was deeding his property to members of his family, that he gave her certain property, and that she never expected any more, and that he was disposing of his property by deed instead of by will. She further testified that she asked Mrs. Hughes to sell the homestead to her son, but " * * * she said no, she had made provision to give it for a retired preacher's home. * * * and said she wasn't selling it." When Mr. Hughes died, he did not leave a last will and testament. Mrs. Hughes remained in possession of the property; she improved it; she converted the house into apartments; and, in 1944, she conveyed by warranty deed, a portion of the land to one Vaughn, who "lived next door." Finally, in 1950, she willed the remaining portion of the homestead to The Baptist Foundation.

 The trial judge stated in his decree: "It is the court's opinion from the evidence in this cause, and the inferences to be drawn therefrom, that the deed from Laura Hughes and her husband, J. E. Hughes to the said J. E. Hughes afore-

mentioned, was first executed and delivered and following such execution and delivery the deed from J. E. Hughes and Laura Hughes to Laura Hughes was executed and delivered. The Court is further convinced that it was the intention of the said J. E. Hughes and wife, Laura Hughes, to divest Mrs. Hughes of any life interest that she had in said property and to reinvest her with fee simple title."

In this, we concur. It follows that the judgment of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.