93 So.2d 127

**J. S. HARDEE et al.**

v.

**J. W. HARDEE.**

**3 Div. 673.**

Supreme Court of Alabama.

Dec. 13, 1956.

Rehearing Denied March 14, 1957.

N. S. Hare, Monroeville, for appellants.

B. E. Jones, Evergreen, for appellee.

⟨ PER CURIAM.

The original bill was filed by J. S. Hardee and forty other persons against J. W. Hardee. Two of the original complainants were stricken and several other persons were added as parties complainant by amendments. The bill as amended alleges that the complainants and the respondent are the joint owners of approximately eighty acres of land situate in Conecuh County, to which we will sometimes refer hereafter as the suit property, which cannot be equitably divided in kind and prayed that it be sold for division of the proceeds among the alleged joint owners according to their respective interests. The bill as amended does not aver how the alleged joint owners acquired their interests but such averments are not necessary. Vest v. Wilson, 223 Ala. 414, 136 So. 730; Brewer v. Brewer, 250 Ala. 222, 34 So.2d 13; Ellis v. Stickney, 253 Ala. 86, 42 So.2d 779.

The respondent, J. W. Hardee, filed his answer wherein he denies that any of the complainants own any interest in the suit property and avers that he is the sole owner. The answer was made a cross bill and it is averred therein that the suit property was owned by N. Z. Hardee, an ancestor of all of the parties to the litigation, but that the respondent-cross complainant is now the owner of the property by virtue of a deed from his sister, Isabella Hardee (executed in 1948), who had obtained fee simple title to the suit property under a deed from her father, N. Z. Hardee, executed on April 6, 1923. The prayer of the cross bill was that the trial court enter a decree declaring that the respondent-cross complainant is the sole owner of the land in controversy and that the title to that land be quieted in him and that the complainants-cross respondents be enjoined from claiming any right, title or interest in the land.

The complainants-cross respondents did not challenge the cross bill by demurrer, but filed an answer wherein they deny that Isabella Hardee acquired fee simple title to the land in controversy under the deed of April 6, 1923, from her father, N. Z. Hardee, and further deny in general terms the validity of the 1948 deed from Isabella Hardee to J. W. Hardee.

After submission on testimony taken before commissioners, a final decree was rendered wherein the relief sought by complainants was denied and their bill dismissed and where it was decreed that the respondent-cross complainant was entitled to relief under his cross bill and that as against the complainants he is the sole owner of the lands in dispute. It was further decreed: "* * * that the title to the above described lands is vested in the said J. W. Hardee and that neither of the Complainants has any right, title or interest in, claim to, or incumbrance upon, said lands above described, or any part thereof."

From that decree the complainants-cross respondents, to whom we will refer hereafter as the appellants, have appealed to this court. The respondent-cross complainant will sometimes be referred to by name and sometimes as the appellee.

At the very threshold of this case is the construction to be placed on the deed from N. Z. Hardee to Isabella Hardee executed as shown above on April 6, 1923, and recorded shortly thereafter. The appellee contends that Isabella obtained a fee simple title to the described lands subject to the use and enjoyment by the grantor during his lifetime, whereas the appellants insist that Isabella was conveyed only a life estate with remainder in the parties to this litigation as "the heirs" of the grantor. As far as this appeal is concerned it can be said that if Isabella did obtain only a life estate, then the parties to this litigation are the joint owners of the property, Isabella having died in 1949 prior to the institution of this proceeding. There is no contention to the contrary, and in fact all of the parties seem to agree on this point.

The deed was introduced in evidence and the original is before us. It is clear that in making the deed a printed form was used, such as was then and is now in general use, having blank spaces to be filled. The deed is set out below. The words which we have italicized were written in the deed, those not italicized are a part of the printed form.

"The State of Alabama, Conecuh County.

"Know all men by these Presents, That for and in consideration of *One Dollar ($1.00) Love and affection and other valuable consideration* Dollars, to the undersigned grantor *N. Z. Hardee* in hand paid by *Isabella Hardee* the receipt whereof is hereby acknowledged, I do grant, bargain, sell and convey unto the said Isabella Hardee the following described real estate, to wit:

"*The South East quarter (SE ¼) of the South West quarter (SW ¼) and the South Half (S ½) of the North East quarter (NE ¼) of the South West quarter (SW ¼) and the West Half (W ½) of the South West quarter (SW ¼) of the South East quarter (SE ¼) Section Ten (10)*

*Township Eight (8) and Range Ten (10)*

"*A life interest in the above described Lands is hereby reserved by the grantor herein named and at his death the Lands Herein described to go to the grantee in fee simple. And at the death of the said grantees death the above described Land is to revert back to the heirs of the above grantor in fee simple*

situated, lying and being in the County of Conecuh and State of Alabama.

"To have and to hold to the said *Isabella Hardee her* heirs and assigns, forever. And *I* do for *myself my* heirs, executors and administrators, covenant with the said *Isabella Hardee* her heirs and assigns, that *I am* lawfully seized in fee simple of said premises; that they are free from all incumbrances; and that *I* have a good right to sell and convey the same as aforesaid; that *I* will, and *my* heirs, executors and administrators shall warrant and defend the same to said *Isabella Hardee her* heirs, executors and assigns, forever, against the lawful claims of all persons.

"Given under *my* hand and seal, this the *6* day of *April, 1923.*

"*N. Z. Hardee* (Seal.)"

We have cases holding that while the written and printed parts of instruments, including deeds, are equally binding, if they are inconsistent the written part prevails over the printed form. Porter v. Henderson, 203 Ala. 312, 82 So. 668; John Deere Plow Co. v. City Hardware Co., 175 Ala. 512, 57 So. 821.

But that rule is of no benefit in this case for the claimed conflict in the deed which has precipitated this litigation is not between the printed and written words, but between the two written sentences which appear between the description of the property and the habendum clause and to which we will sometimes refer hereafter as the written paragraph.

It appears from an opinion made a part of the decree that the trial court's holding that the deed of April 6, 1923, from N. Z. Hardee to Isabella Hardee conveyed a fee simple estate was based on the court's understanding that our holdings in the three cases hereafter cited permitted no other conclusion. Henry v. White, 257 Ala. 549, 60 So. 2d 149; Wright v. Smith, 257 Ala. 665, 60 So.2d 688; Green v. Jones, 257 Ala. 683, 60 So.2d 857.

In each of those cases we held that the deeds under consideration conveyed a fee simple estate. The holding in each case was based on the application of the arbitrary rule that the granting clause in a deed determines the interest conveyed and when it provides for a certain, specific estate, without repugnancy, obscurity or ambiguity therein, it prevails over introductory statements or recitals and over the habendum and other clauses if they are contradictory of or repugnant to it.

■ The granting clause in the deed under consideration in Wright v. Smith, supra, provided for a certain specific estate, a fee simple estate, since the words of grant were followed by specific words of inheritance. So, under the facts of that case, there being no repugnancy, obscurity or ambiguity in that clause, we held correctly that the granting clause prevailed. Webb v. Webb's Heirs, 29 Ala. 588; Dickson v. Van Hoose, 157 Ala. 459, 47 So. 718, 19 L.R.A., N.S., 719; Hill v. Gray, 160 Ala. 273, 49 So. 676; Head v. Hunnicutt, 172 Ala. 48, 55 So. 161; Graves v. Wheeler, 180 Ala. 412, 61 So. 341; Porter v. Henderson, 203 Ala. 312, 82 So. 668; Reynolds v. Reynolds, 208 Ala. 674, 95 So. 180; Gargis v. Kennemer, 216 Ala. 494, 133 So. 620; King v. King, 242 Ala. 53, 4 So.2d 740; Rowell v. Gulf, M. & O. R. Co., 248 Ala. 463, 28 So.2d 209; Stratford v. Lattimer, 255 Ala. 201, 50 So.2d 420. The same is true of our holding in Henry v. White, supra.

The granting clause in the deed involved in Green v. Jones, supra, did not contain words of inheritance or other words sufficient to show the granting of any certain or specific estate. Hence, we were in error in saying, "The granting clause in the deed in question purports to convey the entire title to the grantee Jones, * * *" and in holding that the granting clause prevailed. That holding in Green v. Jones, supra [257 Ala. 683, 60 So.2d 858], cannot be approved or followed. Graves v. Wheeler, supra; Henry v. White, supra.

We now return to a consideration of the deed from N. Z. Hardee to Isabella Hardee in the instant case.

■ The real inquiry in construing the terms of a deed is to ascertain the intention of the parties, especially that of the grantor, and if that intention can be ascertained from the entire instrument, including its several parts, resort to arbitrary rules of construction is not required. And it is the duty of the court under this rule of construction to reconcile the terms of the instrument, if that may reasonably be done, to avoid a repugnancy in its provisions or terms. Stratford v. Lattimer, 255 Ala. 201, 50 So.2d 420; Gamble v. Gamble, 200 Ala. 176, 75 So. 924 and cases therein cited.

■ Another rule of construction of deeds is that "when subsequent words are of doubtful import, they cannot be construed as to contradict the preceding words which are certain." Petty v. Boothe, 19 Ala. 633; McCombs v. Stephenson, 154 Ala. 109, 44 So. 867; Head v. Hunnicutt, 172 Ala. 48, 55 So. 161.

With these rules of construction in mind, we proceed to try to ascertain the intent of the grantor from the "four corners of the instrument" or by trying to reconcile all its provisions if possible. The first sentence of the deed is regular in form, contains no reservations, and shows a conveyance by words of grant to one grantee, Isabella Hardee, the only person shown from whom a consideration flowed to the grantor. True, there were no "words of inheritance" following Isabella Hardee's name, and, lay-

ing aside the provisions of the statute which will be adverted to later, we must continue to look to the deed for a definition of the estate intended to be conveyed. The next part of the deed contains the description. The very first sentence after the description clearly and unmistakably shows an intent on the part of the grantor to reserve for himself a life estate in the property and that, subject to the life estate, title went "to the grantee in fee simple." Words denoting or importing title in fee, such as "words of inheritance," were not employed, but the actual words "fee simple" were used. At this point the intent of the grantor is certain, plain and clear. He intended to convey the lands in fee simple. If there is anything in the deed which reflects an intention to the contrary, it is the next sentence.

That sentence begins with an unintelligible and nonsensical phrase—"And at the death of the said grantees death." With such a beginning, this sentence is not clear; it is obscure, it is of doubtful import, and it requires editing by deleting and adding words from and to the sentence. That immediately places us in the realm of speculation and conjecture.

■ But the deed continues. The next part is the habendum clause which is to "Isabella Hardee, her heirs and assigns, forever." Thus, the habendum imports title in fee simple. The next part of the deed is the warranty and it covenants and warrants to Isabella Hardee, her heirs, executors and assigns. This also imports an intention to convey the title in fee; and it has been held that the habendum and the covenants may be resorted to for purposes of construction, if there is a question of the extent of the ownership in the estate granted. Lowery v. May, 213 Ala. 66, 104 So. 5.

■ The deed before us imports a fee simple title in all its clauses, parts or provisions except one sentence, which, to say the least, is of doubtful import, and this sentence follows a clear statement of intent

that the title passed to the grantee in fee simple. These subsequent words, being of doubtful import, "cannot be construed as to contradict the preceding words which are certain." We do not believe that any appellate court in the land would settle upon such an obscure, doubtful statement—one which must be edited before it makes sense —and hold that it correctly expressed the intent of the grantor to convey only a life estate, when all the other provisions of the deed are plain, clear and expressly or importedly manifest an intention to convey title in fee simple.

But if there should still be a question as to the intent of the grantor, we think the answer is in the statute previously referred to, and its application to the instant case. Title 47, § 14, Code 1940, reads:

"Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended."

As we have heretofore pointed out, words of inheritance were not used in the part of the deed containing words of grant, but under the statute, Isabella Hardee took title to the lands in fee simple "unless it clearly appears that a less estate was intended." We have already noted that every sentence, clause or provision of the deed denoted a fee simple title except the one unclear and doubtful statement which is urged as showing an intent that less than a fee was intended to be conveyed. We cannot say that from a consideration of this deed, viewing it from its four corners, that it clearly appears that a less estate than a fee simple was intended. All of the clear provisions in the deed import a fee simple title.

Therefore, on the question of the intent of the parties as ascertained from the entire instrument, or under the statute, we are constrained to hold that the deed conveyed the fee to Isabella Hardee. The deed in the case of Gamble v. Gamble, 200 Ala. 176, 75 So. 924, was similar in many respects to the deed in the instant case, except that

there were no meaningless phrases which required editing.

As previously noted, the trial court evidently reached the same conclusion by applying the rule of construction enunciated in Henry v. White, 257 Ala. 549, 60 So.2d 149, and Wright v. Smith, 257 Ala. 665, 60 So.2d 688, 689, that "* * * 'if there be two clauses which are utterly inconsistent with each other, and which cannot be reconciled or made to stand together, the last shall give way to the first, the maxim being "the first clause in a deed, and the last in a will shall prevail." ' " (We think the words "clause" is synonymous with the word "provision.") Certainly, if the second sentence following the description in the deed were edited for comprehensibility to make it read "And at the grantee's death, title to the above described lands is to revert back to the heirs of the above grantor in fee simple," then it would be about as irreconcilable with and repugnant to the sentence preceding it which conveyed to the grantee in fee simple as two clauses or provisions in a deed could be, and it would be necessary to apply the arbitrary rule of construction which presumably was applied by the trial court. Such application would result in the first provision prevailing over a following inconsistent provision and support the conclusion that a title in fee was conveyed, which was the finding of the lower court.

■ We have already indicated that we did not think it necessary in the instant case to resort to the arbitrary rule of construction applied by the trial court, but if the result reached by that court is correct, the reasons upon which it proceeded are unimportant, and the decree will not be reversed. Cherokee County v. Cunningham, 260 Ala. 1, 68 So.2d 507; Andrews v. Sullivan, 260 Ala. 291, 69 So.2d 870; Smith v. Smith, 153 Ala. 504, 45 So. 168.

Having concluded that the trial court was correct in holding that the deed under consideration conveyed to Isabella Hardee a fee simple estate, we come now to a consideration of the contentions made by the appellants to the effect that the deed from Isabella to J. W. Hardee is invalid and, hence, the trial court erred in quieting the title in J. W. Hardee.

■ Although most of the testimony elicited from witnesses called by the parties relates to the mental capacity of Isabella Hardee at the time she executed the deed to J. W. Hardee on January 10, 1948, appellee strenuously insists that the answer of appellants to his cross bill was not sufficient to make an issue in that respect and, hence, we should not consider that question on this appeal. The only words in the answer to the cross bill which purport to challenge the validity of the deed of January 10, 1948, are as follows: "Complainants and cross-respondents further deny that the deed referred to in the cross-bill as 'Exhibit B' is valid and of force and effect." The claim of appellee is that the answer was not sufficient to apprise him of the fact that the appellants would raise the issue of the mental incapacity of Isabella Hardee at the time she executed the deed of January 10, 1948. We are inclined to agree with the appellee's insistence that there is no specific indication in the answer to the cross bill that the issue of mental incapacity would be raised or was in the case. Deegan v. Pake, 233 Ala. 435, 172 So. 270. But this issue was tried. The appellee as well as the appellants called numerous witnesses who gave testimony bearing on that question and the notes of submission included such testimony. As we understand the decree of the trial court, the issue was determined on its merits, and we do not think we should treat it in any different respect. Compton v. Compton, 235 Ala. 174, 177 So. 900.

In sitting in judgment on the evidence in this case, we are confronted with the problem of ascertaining that part of the evidence offered which, under existing laws, we may consider in determining the rights of the parties. That problem has not proven to be without difficulty, for throughout the taking of the testimony in this case, and it is extensive, counsel for both parties

were apparently conscious of the fact that much, if not most, of the testimony elicited from the witnesses was incompetent, irrelevant, illegal or immaterial, yet they continued to fill the record with that kind of testimony and in briefs filed here, three on behalf of the appellants and two on behalf of the appellee, the court has been offered no assistance in the matter of determining what evidence it is proper for us to consider.

■ Much of the testimony has been disregarded because of the provisions of § 433, Title 7, Code 1940, which provides in part as follows: "In civil suits and proceedings, there must be no exclusion of any witness because he is a party, or interested in the issue tried, *except that no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding,* * * *."* (Emphasis supplied.) See Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115; Davis v. Tarver, 65 Ala. 98. Much of the testimony violates the hearsay rule and it too has been disregarded.

In our opinion the only testimony tending to show the mental incapacity of Isabella Hardee which need be considered is that of Dr. E. Vernon Stabler, a distinguished physician and operator of Stabler's Infirmary at Greenville, Alabama, to which institution Isabella Hardee was admitted on December 31, 1947, and from which she was discharged on January 4, 1948. Dr. Stabler's testimony is substantially as follows: At the time of admission Isabella Hardee complained of soreness in her abdomen, which did not prove to be of any importance. The doctor saw the patient every day she was in his infirmary and his diagnosis was that she was suffering from mental derangement and senility due to senile changes and that such condition was not temporary. While in the hospital the patient was unruly and irrational at times and was not sure where she was or what she was doing. On one occasion she left the hospital and had to be returned by attendants more or less against her will. On January 4, 1948, the last day on which Dr. Stabler saw Isabella Hardee, she was discharged from the infirmary in a "very limited condition," not having improved appreciably during her stay. Based on his observation of her during the time she was in his infirmary, Dr. Stabler expressed the opinion that by January 10, 1948, the day on which the deed from Isabella to appellee was executed, Isabella Hardee had not improved to any material or appreciable extent; that at that time she was not mentally competent and did not have the mental capacity to transact ordinary business, to comprehend the nature and effect of her actions, or to understand the consequences and effect of a deed; that it was not likely that Isabella Hardee could have improved within several weeks to such an extent that she could capably manage her affairs.

■ The presumption is that every person is sane and the burden of proof is upon the party attacking the conveyance to show the incapacity of the grantor at the very time of the transaction. Halman v. Bullard, 261 Ala. 115, 73 So.2d 351. But where the person attacking the conveyance shows that the grantor was habitually insane before the conveyance was attempted to be executed, the burden then shifts to those claiming under the conveyance to show that it was made during a lucid interval. Johnston v. Johnston, 174 Ala. 220, 57 So. 450, and cases cited; Pike v. Pike, 104 Ala. 642, 16 So. 689; Hall v. Britton, 216 Ala. 265, 113 So. 238; Halman v. Bullard, supra. In Pike v. Pike, supra, we said [104 Ala. 642, 16 So. 690]: "And it may be deduced as a general rule from all the authorities that while acts done in a lucid interval are to be esteemed valid, and will not be defeated by any overstrained demand of proof, there must be clear, convincing evidence of the intermission of the insanity, and that the act proceeded from the unaided volition of the party."

While we have some doubt as to whether or not Dr. Stabler's testimony should be construed as showing that Isabella Hardee suffered from permanent insanity, we are so treating his testimony.

However, we are of the opinion that the testimony given on behalf of appellee by persons competent in all respects to so testify is to the effect that the deed in question—that is, the deed of January 10, 1948—was executed at a time when Isabella Hardee was mentally competent in all respects. In fact, the evidence of neighbors who lived in the community and who visited Isabella and who are without interest in the outcome of the litigation testified that after her return from the hospital she appeared to be normal in all respects and conducted herself as she had prior to her illness as a sane and competent woman.

The deed in question was executed in the office of Hon. B. E. Jones of the Evergreen bar only six days after Isabella Hardee returned to her home from the Stabler Infirmary. She was accompanied to the office of Mr. Jones by appellee, the grantee in the deed, and by one of his daughters. The daughter remained in the office of Mr. Jones and was present at the time the deed was executed, but appellee was not present. The deed was signed in the presence of and acknowledged before Miss Daisy M. Burnett, who at that time was the secretary of Mr. Jones. Miss Burnett had served Mr. Jones and his partners in that capacity since 1915 and the record shows her to be an unusually competent person, one thoroughly familiar with the affairs of a law office.

Miss Burnett testified as a witness for appellee and her testimony is to the effect that at the time she signed the deed Isabella Hardee appeared to be perfectly normal. She discussed her business, what she wanted done with the land in question, stating that many years previously when the appellee moved in her home that she agreed to leave the land to him.

After a careful and studied consideration of the evidence in this record which can be properly considered, we are of the opinion that Isabella Hardee was not mentally incompetent at the time the deed was executed, but was able to fairly understand the nature and consequences of the act in question. Halman v. Bullard, supra; Shorter v. Shorter, 250 Ala. 628, 35 So.2d 514.

Moreover, we feel that the execution of the deed "proceeded from the unaided volition" of Isabella Hardee. The evidence in our opinion does show a confidential relationship between the grantor and the grantee, J. W. Hardee. And if it can be said that the brother was the dominant party in this relationship, we feel that the evidence shows that the execution of the deed did not result from undue influence arising from that relationship.

The execution of the deed was the natural thing to do, for it had been appellee and his children who had for many years lived in the home of Isabella, caring for her and looking after her interests, although the evidence shows that appellee paid rent for the use of the land. The other members of Isabella's family saw her infrequently and did not maintain the close relationship which apparently existed between her and the J. W. Hardee family. True, the deed recites a consideration of $5,000 in hand paid and it is admitted that no money was paid by the appellee to the grantor, but the evidence shows that the $5,000 figure was inserted at the direction of Isabella Hardee, who felt that the services rendered to her by J. W. Hardee and his family were easily worth that figure.

This record presents the not unusual situation of a family being torn asunder over the disposition of property which had belonged to a deceased member of the family. Those of the appellants who testified admitted their bitterness and animosity toward the appellee, whom they feel has acquired property which rightfully be-

longed to all of the members of their family. But a person has the right of a voluntary and untrammeled disposition of his or her own property. Hutcheson v. Bibb, 142 Ala. 586, 38 So. 754. We think the evidence shows that is exactly the situation here involved.

▮▮▮ We have referred above to the existence of a confidential relationship between Isabella Hardee and the appellee. That relationship is established by the evidence and we do not want to be understood as holding that the mere relationship of brother and sister in itself creates a confidential relationship. Hinson v. Byrd, 259 Ala. 459, 66 So.2d 736; Cherry v. Cherry, 257 Ala. 277, 58 So.2d 597; Noel v. Noel, 225 Ala. 302, 143 So. 469. For a contrary holding which will not be followed see Boney v. Hollingsworth, 23 Ala. 690.

The questions presented on this appeal have not proven easy of solution, but after a most thorough and careful consideration of the record and the able briefs filed by counsel representing the respective parties, we are of the opinion that the decree of the trial court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, MERRILL and SPANN, JJ., concur.

LAWSON and STAKELY, JJ., dissent.

LAWSON, Justice (dissenting).

I cannot agree that the deed of April 6, 1923, from J. Z. Hardee to Isabella Hardee conveyed a fee simple title.

If I understand the court's opinion correctly, that conclusion is based in the main on the holding that the second sentence of the so-called written paragraph must be ignored in that it is obscure, unclear, and of doubtful import. That sentence reads: "And at the death of the said grantees death the above described land is to revert back to the heirs of the above grantor in fee simple." (Emphasis supplied.) Those parts of the quoted language which we have italicized are superfluous, but I feel that it is most hypercritical to say that simply because they are included the entire sentence is without meaning. The opinion of the court condemns the sentence simply because of redundancy without pointing out any uncertainty or possible double meaning. I cannot attribute any meaning to the language quoted except that at the death of Isabella Hardee the land described in the deed is to go to the "heirs" of J. Z. Hardee "in fee simple." I submit that no reasonable construction of that sentence leads to any other interpretation. The face of the instrument in more ways than one evinces the want of skillfulness in the person who drafted it and the inartificial, imperfect use, not only of technical terms, but of words in popular use. I cannot agree with the holding of the court to the effect that the first sentence of the so-called written paragraph is clear and certain in all respects. I agree that under our cases that when viewed in the light of the surrounding circumstances, that sentence should be interpreted as conveying a present interest to the grantee subject to the use and enjoyment of the grantor during his lifetime, hence, the instrument is a deed rather than a testamentary document. But certainly a skilled scrivener would have chosen more apt language to convey that meaning. Again, one skilled in the use of technical terms would not have included the words "fee simple" in both sentences of the so-called written paragraph.

We have often said of a deed which shows on its face that it was written by an unskilled person that a much greater latitude of construction must be indulged rather than the use of technical rules and a blind adherence to the strictest meaning of those words. Hamner v. Smith, 22 Ala. 433; Campbell v. Gilbert, 57 Ala. 569; Gamble v. Gamble, 200 Ala. 176, 75 So. 924.

It seems to me to be entirely unreasonable to say that simply because the sentence

under consideration contains a redundancy that it must be ignored even though it is apparent that the instrument was drafted by an unskilled person. I feel that the majority opinion loses sight of reality in an effort to avoid a holding that there is an irreconcilable conflict between the two sentences of the so-called written paragraph.

Apparently the court holds that if there be an irreconcilable conflict between the first and second sentences of the so-called written paragraph then, under the provisions of § 14, Title 47, Code 1940, the deed must be construed as conveying a fee simple estate. If such is the holding of the court it appears to be based on a consideration of the deed only "from its four corners" to the exclusion of the evidence which relates to the situation of the parties and the circumstances surrounding them at the time the deed was executed. The opinion of the court never does say that such evidence cannot be considered in this case, but it is not dealt with in the opinion of the court and the Justices who have concurred in that opinion all expressed disagreement with the writer in conference when he insisted that such evidence should be considered in trying to arrive at the intention of the parties and that when so considered the deed should be construed as conveying to Isabella Hardee only a life estate. So I assume that the court intends to hold that such evidence cannot be properly considered.

As far as I can determine no decision of this court is cited in support of the court's holding that by virtue of the provisions of § 14, Title 47, supra, the deed presently under consideration must be construed as passing to the grantee, Isabella Hardee, a fee simple estate.

In Powell v. Pearson, 220 Ala. 247, 255, 125 So. 39, 45, we said of the provisions then codified as § 6900, Code 1923, now § 14, Title 47, Code 1940, as follows: "* * It is the rule that, when the granting clause does not designate the estate, without more, it is held to vest the fee; to the contrary

when the instrument shows the estate is limited by the habendum clause, and that a less estate than the fee was intended to be conveyed or devised * * *." And in the case of Slaughter v. Hall, 201 Ala. 212, 77 So. 738, 739, we said of those provisions then codified as § 3396, Code 1907: "* * The statute providing when the deed or conveyance shall be construed as of a fee refers to the deed or conveyance as a whole, and not merely to the granting, habendum, or other clauses in the instrument. If the deed or conveyance, considered as a whole, construed by viewing it from its four corners, clearly shows what estate was intended to be conveyed, then the statute has no field for operation. It is resorted to only when, from the whole instrument, it is doubtful what estate was intended to be conveyed * * *."

I see no escape from the conclusion that based on a consideration of all the provisions of the deed under consideration, there is doubt as to what estate was intended to be conveyed. I am not too certain that the majority of the members of the court agree with this statement in view of their holding that the so-called second sentence must be ignored. So, assuming that the provisions of § 14, Title 47, supra, are applicable, I am of the opinion that the court is not confined to a consideration of the deed "from its four corners" to the exclusion of a consideration of attendant circumstances in its effort to determine whether an estate less than a fee was intended by the parties.

I am committed to the view that the rule prescribed by § 14, Title 47, supra, like the rule to the effect that the first clause in a deed prevails over a subsequent conflicting clause, is an arbitrary rule of construction and should never be resorted to until all efforts to reconcile the conflicting parts and to ascertain the true intention of the parties have failed, including a consideration of the circumstances attending the execution of the instrument.

We have said in many cases that in the construction of written instruments the

controlling inquiry is the intention of the parties and we have cases which hold that the intention must be ascertained from a consideration of the whole instrument, from the nature of the subject matter, and from the surrounding circumstances; that is to say, by having regard for the situation of the parties and the objects they had in view in making the contract or conveyance. First National Bank of New Brockton v. McIntosh, 201 Ala. 649, 79 So. 121, L.R.A. 1918F, 353; Porter v. Henderson, 203 Ala. 312, 82 So. 668; King v. Coffee, 222 Ala. 245, 131 So. 792; Smith v. Bachus, 195 Ala. 8, 70 So. 261. See Walker v. W. T. Smith Lumber Co., 226 Ala. 65, 145 So. 572; Nettles v. Lichtman, 228 Ala. 52, 152 So. 450, 91 A.L.R. 1455; Williams v. Johns-Carroll Lumber Co., 238 Ala. 536, 192 So. 278; Hart v. Baptist Foundation of Alabama, 264 Ala. 632, 88 So.2d 681; Brown v. Huckabaa, 264 Ala. 660, 89 So.2d 180. Of course, the rule which permits the consideration of the attendant circumstances does not authorize a consideration of what the parties may have stated as to their intention, nor their negotiations, nor evidence as to what other persons understood the parties to intend. King v. Coffee, supra; Brown v. Huckabaa, supra.

In view of the holding of the court, I see no occasion to set out here the evidence as it relates to the situation of the parties and the circumstances attending the execution of the deed, which I feel lead to the conclusion that it was the intention of the parties that Isabella Hardee was to get only a life estate under the deed of April 6, 1923, to her from her father.

The statement in the court's opinion to the effect that the trial court's conclusion that the deed under consideration conveyed a fee simple title was based on the application of the rule that the first clause prevails over the second clause in a conveyance, is, in my opinion, an incorrect interpretation of the decree of the trial court. I think it beyond question that the trial court based its conclusion in the main on our holding in the case of Green v. Jones, supra, which the court has felt constrained to overrule in so far as it holds that the granting clause in the deed there under consideration took precedence over subsequent clauses, inasmuch as the granting clause conveyed no certain, specific estate. That case, among others, is cited in the decree of the court and it contains no reference to the so-called arbitrary rule that the first clause in a deed prevails over a subsequent clause in conflict therewith, which rule is, generally speaking, different from the rule to the effect that the granting clause prevails where a specific, certain estate is defined therein and the granting clause is without ambiguity, obscurity or repugnancy, for where such is the case the granting clause prevails over introductory recitals as well as over subsequent clauses.

I make this observation concerning the court's holding to the effect that the trial court based its decision on the rule that the first clause prevails over subsequent conflicting clauses, although apparently the court has not based its holding on the application of that rule.

Inasmuch as I am of the opinion that the deed of April 6, 1923, conveyed only a life estate to Isabella Hardee, I am constrained to dissent, but express no opinion as to the court's holding concerning the deed of January 10, 1948, from Isabella Hardee to the appellee.

STAKELY, J., concurs in the foregoing views.