15 So.2d 625

### W. E. BELCHER LUMBER CO. v. WOODSTOCK LAND & MINERAL CO.

#### 7 Div. 735.

Supreme Court of Alabama.

Nov. 18, 1943.

W. E. Belcher or W. E. Belcher Lumber Company."

McQueen & McQueen, of Tuscaloosa, for appellant.

L. L. Crawford and C. A. Wolfes, of Fort Payne, for appellee.

**8**

**BROWN, Justice.**

Common law action by the appellee against the appellant W. E. Belcher Lumber Company, Inc., W. E. Belcher, Sloss-Sheffield Steel & Iron Company, W. R. Waid and C. C. Headley for damages for the alleged tortious acts of defendants in entering upon "the south half and the NE-¼ of the SW-¼, Section 34, Township 4, Range 10 East, situated in DeKalb County, Alabama," mining iron ore and converting the same to their uses.

The defendant Waid suffered judgment by default, and on writ of inquiry the question of the amount of damages against him was submitted to the jury sitting in the trial against the other defendants, resulting in a verdict for plaintiff, assessing the damages at $1,500 against said Waid, W. E. Belcher Lumber Company, and Headley, followed by judgment from which W. E. Belcher Lumber Company, Inc., has appealed, with summons to the other judgment defendants to appear and defend. W. E. Belcher Lumber Company, Inc., only assign errors.

Appellee in brief states that Sloss Company was eliminated on plea in abatement, showing that it was not engaged in business by agent or otherwise in DeKalb County at the time this suit was instituted. This does not appear of record, nor is it material on this appeal.

The complaint consists of four counts, the first two counts in trespass following, substantially, the form prescribed by § 223, Code 1940, Tit. 7, Form 28, "For trespass to land"; the third in trover for the conversion of "1000 Tons of Iron Ore, the property of plaintiff."

The fourth count, contrary to the rules of good pleading, combines a willful trespass in entering upon the land and severing the ore with trover for the conversion of the ore after the severance by a removal and sale thereof.

This defect was not pointed out by the demurrer and, therefore, is not available for reversal on this appeal. Code 1940, Tit. 7, § 236; Union Central Life Ins. Co. v. Guffin, 232 Ala. 254, 167 So. 321.

None of the counts were subject to the grounds stated in the demurrer.

The first and the major contention of the appellant is that there is a total absence of evidence showing or tending to show that the plaintiff ever had possession of the lands, the subject of the trespass, from which the ore was taken. We are not of opinion that contention is well taken. The evidence is without dispute that this tract of land, a particular description of which is set out at the head of this opinion, was known as the York land, and the plaintiff adduced in evidence a deed of warranty executed by Woodstock Iron and Steel Corporation, a corporation, under the laws of Virginia, Alexander Shearing and J. Bentley Cueman, of New York City, Borough of Manhattan, New York, as Trustees, to the plaintiff, describing said tract of land and purporting to convey the mineral interest in the same to plaintiff.

Before the deed was offered, the plaintiff's witness DeHart testified: "I am Secretary and Treasurer of Woodstock Land and Mineral Company. I would say that I was familiar with their holdings in DeKalb County, Alabama. I made trips over their property, quite a few, the Morgan Property and York Property. I have been over it a number of times. I recognize the deed which you hand me, and I identify in the deed, the property in question in this case." The deed was then offered in evidence by the plaintiff and received in evidence by the court, over defendant's objection, to state the ground in the language of the bill of exceptions, "because it covers land other than those inquired about." The deed was then offered as applying to the specific tract, without further objection. The court overruled the objections and admitted the deed in evidence, and this ruling was free from error.

The witness DeHart further testified that he had been connected with plaintiff corporation for four or five years, and made trips into DeKalb County, and looked over the interest of the plaintiff during the years 1940–41 and 42. That he looked over the lands some six or seven months before the trespass was committed by Waid. That Charles E. York was in possession of the surface rights on the 120 acres, that the first witness saw of the work or operations by Waid was in March, 1941. That York was in posses-

sion of the surface rights in the years 1940, 1941 and 1942, and was in possession when witness came to the property, 1940.

York was sworn and examined as a witness for plaintiff and testified that this land formerly belonged to his father but that he had owned and been in possession of the surface rights since 1927. That he did not own the mineral rights. That he remembered the mining operation in January, 1941, and objected to Waid about taking up his surface, and testified that he had a conversation with Headley, defendant's employee, who came at the instance of defendant to see if Waid was on defendant's holding, i. e.: "Me and Headley were talking. I told him this was over on my land and didn't belong to Belcher unless they had bought it recently; it belonged to Woodstock and he showed me an old map and said he didn't understand what that meant and asked me, and I told him that it showed the Battelle property and didn't show this land, and I told him that this land belonged to me and the ore belonged to the Woodstock people."

The defendant objected to York's testimony on this point, before he testified, and moved to exclude it afterwards, "because the question, 'Did you have a conversation with him about the time they came on your land or shortly after?', called for testimony which was irrelevant, incompetent and immaterial and because there was no testimony showing that Headley was an agent for W. E. Belcher Lumber Company." Before this witness testified, W. E. Belcher Lumber Company's answers to interrogatories propounded to the defendant had been offered and received in evidence, showing that Headley was in the employ of the defendant corporation, and testimony embodied in a showing for W. E. Belcher, an absent witness, was subsequently offered by defendant, going to show that Headley had gone on this land by instructions of the president of the corporation to ascertain whether or not Waid was operating on the defendant's property, or was trespassing on plaintiff's lands.

■ The objection and motion were overruled without error. This was a declaration of a party in possession made to a party defendant, and an agent of the defendant corporation, while acting within the scope of his authority. The statement of the witness York was of the res

gestae of his possession, and of the res gestae of *Headley's investigation,* and was provoked or invited by such investigation.

The defendants offered no evidence to show title in either of them, and A. R. Belcher, the Secretary of W. E. Belcher Lumber Company, Inc., testified: "I am the son of W. E. Belcher and operate the sawmill business at Battelle. Within the last few years, my father has purchased lands in that community, I transacted the business, and he bought ten thousand six hundred odd acres. He bought both the surface and the mineral, and the land which he bought joins the land in question in this suit. I have seen the ditch where this ore was taken out. I have known of land being sold from time to time in that general locality, and my father has bought land there to my knowledge and I know that in the spring of 1941, and I think I know the price of land at that time. In my judgment the reasonable market value where the ditch was put there, top, bottom and all would be about $1.50 per acre. * * * *About the time this land was trespassed upon Horace Cooper bought land,* seven fortys, either from the railroad company or the Alabama State Land Company. I am not sure whether he bought the mineral rights or not." [Italics supplied.]

The defendant also offered in evidence a "list of the Mineral Interests and Mining Privileges Owned Over, In and Under the Following Lands to-wit in DeKalb County, Alabama. Returned By The Woodstock Land & Mineral Company to Tax Assessor of DeKalb County, Alabama, For The Year, 1943. East half of the SW quarter and SW quarter of the SW quarter of Section 34, Township 4, Range 10, Acreage 120. Total number of acres Mineral Rights, DeKalb County 5,353, and Assessed Value $1,000.00," prepared and identified by the witness I. A. DeHart as "Sec. & Treas. of the Woodstock Land & Mineral Company", and sworn to by him.

■ This evidence, showing color of title in the plaintiff, and acts of actual possession, showing the exercise of such dominion over the mineral interests in said land as it was susceptible of in its then state, running back prior to the trespass, was sufficient to warrant the submission of the issue of possession to the jury. Stephens v. Stark, 232 Ala. 485, 168 So. 873; Pearce v. Aldrich Mining Co., 184 Ala. 610, 64 So. 321; Beaufort Land & Invest-

ment Company v. New River Lumber Co., 88 S.C. 358, 68 S.E. 637, 30 L.R.A.,N.S., 243.

The evidence further goes to show that by verbal agreement between the appellant and Waid, the appellant advanced to Waid money to buy machinery and to finance his operations, and authorized him to mine ore from the lands of appellant; that it was to receive 50 cents per gross ton royalty; that the ore was to be shipped to the Sloss-Sheffield Steel & Iron Company, and it was to "withhold for appellant's account" this royalty.

So far as appears no effort was made by the appellant to point out to Waid appellant's property or the boundaries thereof, and there is a tendency in the evidence going to show that appellant authorized Waid, under mistake of fact, to mine on the York property. Waid's statement to that effect made to York, while engaged in mining on the York tract, is in evidence.

The evidence further goes to show that the ore mined by Waid from the York tract was shipped to the Sloss Company, and it accounted to appellant for the royalties and appellant received the same after notice that Waid was taking ore from the York tract—the mineral interest in which was claimed by plaintiff.

■■ In Cabot v. Kingman et al., 166 Mass. 403, 44 N.E. 344, 33 L.R.A. 45, the Massachusetts Supreme Judicial Court, speaking through Field, C. J., reaffirmed the doctrine stated by Lord Blackburn, in Dalton v. Angus, 6 App.Cas. 740, 829, that: "'Ever since Quarman v. Burnett, 6 Mees. & W. 499, it has been considered settled law that one employing another is not liable for his collateral negligence, unless the relation of master and servant existed between them. So that a person employing a contractor to do work is not liable for the negligence of that contractor or his servants. On the other hand, a person causing something to be done, the doing of which casts on him a duty, cannot escape from the responsibility attaching to him, of seeing that duty performed, by delegating it to a contractor. He may bargain with the contractor that he shall perform the duty, and stipulate for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it. Hole v. Sittingbourne & Sheerness Railway, 6 Hurl. & N.

488; Pickard v. Smith, 10 C.B.,N.S., 470, 473; Tarry v. Ashton, 1 Q.B.Div. 314.' See Hughes v. Percival, 8 App.Cas. 443; Bower v. Peate, 1 Q.B.D. 321; Woodman v. Metropolitan Railroad, 149 Mass. 335, 21 N.E. 482, 4 L.R.A. 213, 14 Am.St.Rep. 427; Blessington v. Boston, 153 Mass. 409, 26 N.E. 1113; Harding v. Boston, 163 Mass. 14, 39 N.E. 411." Cabot v. Kingman, 166 Mass. 406, 44 N.E. 345, 33 L. R.A. 45.

This doctrine was reaffirmed by this court in Republic Iron & Steel Co. v. Barter, 218 Ala. 369, 118 So. 749, and applied to a lessor who authorized the removal by the lessee of the pillars left in the original operation, in consequence of which there was a subsidence, to the damage of the owner. See also Campbell v. Louisville Coal Mining Co., 39 Colo. 379, 89 P. 767, 10 L.R.A.,N.S., 822; Alabama Clay Products Co. v. Black, 215 Ala. 170, 110 So. 151.

■ Whether the relation created by the dealings between the W. E. Belcher Lumber Company and Waid be that of joint adventurers, lessor and lessee, or contractee and contractor, the arming of Waid with machinery and finances to enter upon the lands of the Belcher Company to engage in mining operations imposed a duty on the Belcher Company, for the protection of adjoining land owners, to inform Waid of the location and boundaries of the Belcher Company's holding subject to his operation, and if, as a proximate result of a breach of this duty, Waid went upon plaintiff's lands and took therefrom iron ore, the property of plaintiff, under the stated principles of the common law, the Belcher Company is liable in the equitable action of trover as a joint-tortfeasor with Waid in the conversion of the ore.

■ The jury was warranted in finding, under the evidence in this case, that Waid was not so informed and that the Belcher Company itself did not know of the exact locations and boundaries of its own properties until after the mining operation was in progress, on the York tract.

■ The evidence also warranted a finding by the jury that the Belcher Company, after knowledge of the acts of Waid, ratified his act and accepted the fruits of his wrong.

The evidence further goes to show that Headley, as the agent of the Belcher Com-

pany, went upon the York property and reported to the company that so far as he was able to determine Waid was on its property.

Therefore, the court did not err in refusing the general affirmative charges, nor the special affirmative charge as to Counts 1 and 2, requested by the defendant in writing.

In the absence of evidence as to the value of the mineral interest before and after the trespass, charges 4 and 6 could have well been given, but after full review of the evidence, we are not of opinion that the judgment should be reversed because of their refusal, nor are we of opinion that the judgment should be reversed because of the refusal of charges 9 and 10, nor for overruling the motion for new trial. The verdict when considered in the light of the evidence does not indicate that the jury assessed punitive damage.

Affirmed.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur.