329 So.2d 544

**ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE CO., INC.**

v.

**Lawrence D. SMELLEY.**

SC 1358.

Supreme Court of Alabama.

March 19, 1976.

O'Bannon & Gonce, Florence, for appellee.

Bedford & Bedford, Russellville, for appellant.

JONES, Justice.

This is a suit for damages under uninsured motorist coverage of two insurance policies and an endorsement issued by Alabama Farm Bureau Mutual Casualty Insurance Co., Inc. After pre-trial conference, the parties stipulated that the policies and endorsement provided at least $20,000 uninsured motorist coverage to the plaintiff, Lawrence D. Smelley, an Alabama State Trooper. The question of whether the endorsement provided an additional $10,000 in coverage was submitted to the trial Judge, who ruled that the endorsement did provide an extra $10,000 coverage. Farm Bureau admitted liability and the case was tried to a jury solely on the issue of damages. The jury returned a verdict of $17,500 in favor of the plaintiff.

Farm Bureau appeals, primarily asserting four errors. First, Farm Bureau claims the Judge erroneously found that the endorsement provided an additional $10,000 coverage; therefore, his instructions to the jury that they could return a maximum verdict of $30,000 was error. Second, the trial Judge erroneously refused Farm Bureau's requested instructions that the jury could not award damages for medical bills not paid for by the plaintiff, and the trial Judge allowed into evidence the amount of Smelley's medical bills without proof that Smelley had paid them. Third, Farm Bureau claims that there was no evidence° that Smelley suffered permanent injuries, loss of future earnings or loss of future earning capacity; therefore, it was error for the trial Judge to admit

mortality tables into evidence and instruct the jury as to those elements of damages. Fourth, the verdict of $17,500 is excessive. We will address these issues in order.

■ First, for the purpose of this appeal, we assume without deciding that the trial Judge was in error in finding that the endorsement provided an additional $10,000 coverage. We nevertheless hold that the error of instructing the jury that they could return a verdict up to $30,000 was rendered harmless by the jury's returning a verdict of $17,500. ARAP 45 provides:

"No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal or special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

The alleged erroneous instruction only informed the jury that their verdict could not exceed $30,000; it did not indicate to the jury that $30,000 or any other amount was justified by the evidence. Farm Bureau argues that by extending the limits of their liability, the instruction persuaded the jury to return a higher verdict than it would have returned if the maximum liability had been $20,000. However, the maximum limit of recovery is not an element of damages, and we cannot assume, without proof, that the jury disregarded its obligation to reach a verdict based on evidence of damages properly before them. For other cases holding that an erroneous instruction may be rendered harmless by the jury verdict, see *W. E. Belcher Lumber Co. v. Woodstock Land & Mineral Co.*, 245 Ala. 5, 15 So.2d 625 (1943); *Hill v. Wyrosdick*, 216 Ala. 235, 113 So. 49 (1927).

Farm Bureau's second argument is that the trial Judge erroneously refused its requested instruction that the jury could not award damages for medical bills which were not paid by Smelley. The trial Judge's instruction on this issue, which was taken from Alabama Pattern Jury Instructions, § 11.09, clearly informs the jury that damages for medical expenses are to be allowed only "for doctor's and medical bills which the plaintiff has paid or has become obligated to pay." This is a correct statement of the law, and we find no error in the Court's refusing additional instructions. Farm Bureau also objects to the introduction of evidence of the plaintiff's medical bills without any proof that the plaintiff has paid them. Farm Bureau cites Title 36, § 58(69), Code, as evidence that the State of Alabama insured against the hospital and medical expenses of the plaintiff. However, evidence that an insured has been compensated for a loss by an indemnity insurer is not admissible in Alabama notwithstanding the fact that the plaintiff has introduced evidence of the amount of medical expenses *incurred* by the plaintiff. *Vest v. Gay*, 275 Ala. 286, 154 So.2d 297 (1963). Since the parties have stipulated to the reasonableness of the bills, the trial Judge committed no error by admitting the evidence of the plaintiff's hospital and medical bills.[1]

Third, Farm Bureau claims that mortality tables were introduced into evidence despite the fact that there was no evidence of permanent injuries, loss of future earnings, or earning capacity. In Alabama, mortality tables are admissible when there is evidence (even though it may be controverted) from which the jury may draw a reasonable inference that a plaintiff's injuries are permanent. *Louisville & Nashville Railroad Co. v. Richardson,* 285 Ala. 281, 231 So.2d 316 (1970);

*Louisville & Nashville Railroad Co. v. Steel,* 257 Ala. 474, 59 So.2d 664 (1952); *Southern Railway Co. v. Cunningham,* 152 Ala. 147, 44 So. 658 (1907). If the tables are admitted, they may be used by the jury to determine the plaintiff's impaired or diminished earning capacity. *Alabama Great Southern Railroad Co. v. Gambrell,* 262 Ala. 290, 78 So.2d 619 (1955).

We have examined the record for specific legal evidence from which the jury could draw a reasonable inference that Smelley suffered permanent injuries. The record reveals that he was involved in an automobile accident on October 6, 1974, and was taken to the emergency room of Eliza Coffee Memorial Hospital. The doctor who examined Smelley in the emergency room testified that he was complaining of severe neck pain plus pain in the chest and hip. An examination of Smelley revealed that he had a cerebral concussion, cervical strain, muscle spasms in the shoulder blade area, and separation of rib cartilages. An x-ray of Smelley's spine revealed a narrowing of the L–5 vertebra. Since the accident, the doctor testified, Smelley had apparently developed bursitis in his shoulder blade radiating out his right upper extremity, which was treated with an injection into the muscle under his collarbone. The doctor also testified, "I think the chances are that he will have some recurrent pain in his neck and as time goes by, some arthritic changes." Smelley testified that since the accident he has had constant pain in his shoulder which has hampered his ability to move his shoulder. He also testified that he has had recurring lower back pain, headaches and dizziness.

On cross examination, the doctor stated that the only positive permanent injury Smelley suffered was to his L–5 disk, but

---

1. We recognize that Alabama has been cited as the only jurisdiction contra to the general principle of the "collateral source" rule. *Torts—Cases and Materials,* Green et al., 1968; 14 Ala.L.Rev. 148. This results from a misconstruction of *Jones v. Keith,* 223 Ala. 36, 134 So. 630 (1931), and overlooks later case law development.

the doctor stated that he could not say that plaintiff would not have some future trouble with his neck. The doctor also stated that he was not able to say that the injury to Smelley's spine definitely resulted from the injury.

The plaintiff introduced evidence of loss of earning capacity or future income on direct examination. The plaintiff is employed as an Alabama State Trooper. His job requires extensive driving and possibly arresting unwilling persons. He testified that the pain in his lower back is especially troublesome after driving and the doctor testified that any vigorous activity such as arresting unwilling persons "might trigger some of his muscle spasm and pain over again or else his pain under his shoulder blade."

In our opinion, the jury could draw a reasonable inference from this evidence that Smelley suffered permanent injuries which would impair his future earning capacity. Therefore, it was not error to admit the mortality tables.

Farm Bureau's fourth argument is that the verdict is excessive. We have already recited the testimony of Smelley's pain from his injuries to his spine, shoulder, and ribs and the potential for continued pain from bursitis in his shoulder and the narrowing of his lumbar disk. There is also evidence which indicates that Smelley's capacity to pursue his occupation has been impaired. The trial Judge overruled Farm Bureau's motion for a new trial on the ground that the verdict was excessive; and, in our opinion, the verdict does not indicate passion, prejudice, corruption, or mistake on the part of the jury. *Louisville & Nashville Railroad Co. v. Tucker,* 262 Ala. 570, 80 So.2d 288 (1955).

We therefore affirm.

AFFIRMED.

HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.