362 So.2d 868 (1978)
AFRICAN METHODIST EPISCOPAL CHURCH, a corporation, et al.
v.
ST. PAUL METHODIST CHURCH OF SELMONT, a corporation, et al.
77-252.
Supreme Court of Alabama.
September 22, 1978.
*869 Carolyn D. Gaines of Chestnut, Sanders & Sanders, Selma, for appellants.
Harry W. Gamble of Gamble & Gamble, Selma, for appellees.
BEATTY, Justice.
This is the second appeal by the African Methodist Episcopal Church in the United States of America (plaintiff) in this contest with the Saint Paul Methodist Church of Selmont over the ownership of church property. We affirm.
The essential facts appear in our earlier opinion at 295 Ala. 343, 329 So.2d 542 (1976). They involved the construction of two deeds under which two different grantors, one King and the Attorney General of the United States, conveyed their interests in real property to certain named persons "as trustees of St. Paul African Methodist Church, Selma, Alabama." In that opinion we pointed out a difference between the granting clause and the habendum clause in each deed. The granting clause reads:
THIS INDENTURE, made by and between. . . party of the first part, and [fourteen named individuals], as Trustees of St. Paul African Methodist Episcopal Church, Selma, Alabama, parties of the second part;
while the habendum clause is:
TO HAVE AND TO HOLD, . . . unto the said parties of the second part, and successors in office, forever in trust, for the use of the members of the African Methodist Episcopal Church in the United States of America, according to the rule and discipline of said Church, which from time to time may be adopted and agreed *870 upon by the ministers and preachers of said Church at their General Conference in the United States of America.
In the earlier case the trial court granted summary judgment in favor of the St. Paul Methodist Church of Selmont, a then newly formed church. The trial court reached that summary conclusion from a construction of the language contained in the two deeds and from an application of Tit. 10, §§ 126(1), (2), Alabama Code (Recomp.1958). This Court reversed that finding on the ground that those Code sections, while they might aid in determining the grantors' intent, did not foreclose the inquiry. "As a general proposition," we stated at 295 Ala. 346, 329 So.2d 544, "summary judgment, when issues of motive, intent, and other subjective feelings and reactions are material, is likely to be inappropriate. Moore's Federal Practice § 56.17[41.-2]."
Upon remand, the trial court conducted an evidentiary hearing on November 28, 1977, after which it issued an order including the following findings of fact and conclusions:
Before September 1, 1955, the lot involved in this action, upon which a church building had stood for many years, was contained in a large tract of land and owned by the Estate of Alice DeVane King, deceased. All of the property had been devised by will of the decedent equally to her cousin, Frederic D. King, and an alien German woman named Marie Smitter. The undivided one-half interest owned by the latter had been seized by the Alien Property Custodian of the U. S. Government during the last World War. By similar deeds, dated September 1, 1955, and October 15, 1955, respectively, the Attorney General of the United States and Frederic D. King, for a consideration of Ten Dollars ($10.00) each, conveyed their entire interest in the real estate here involved to certain named individuals `as trustees of St. Paul African Methodist Church, Selma, Alabama', which was at that time an unincorporated church or association of that name. The two conveyances are copied in haec verba and attached hereto as `Exhibit A' and `Exhibit B'.
When the aforesaid conveyances were made to the trustees of the local congregation known as St. Paul African Methodist Church, Selma, Alabama, the members of the local congregation had an ecclesiastical connection or affiliation with a larger body known as the African Methodist Episcopal Church in the United States of America, a Plaintiff in this case.
On June 12, 1969, the members of the aforesaid St. Paul African Methodist Episcopal Church, Selma, Alabama, which until that time had remained an unincorporated association, formed themselves into a corporation under Article 3 of Chapter 7 of Title 10 of the Code of Alabama 1940 (Recompiled 1958), and chose for the name of said corporation `St. Paul Methodist Church of Selmont', which corporation is a Defendant in this case.
The Plaintiffs objected to the control and management by Defendants of the real estate described in the two deeds in question, their objections culminating in the filing of this action on July 29, 1969.
The real controversy in the case is the ownership of the real estate conveyed in the two deeds above mentioned. There were other matters averred in the complaint as amended, but the ownership of the real estate was the only issue considered by the parties on the trial, and the only one treated by the Court here.

CONCLUSIONS OF THE COURT
It appearing to the Court that the rights and claims of the parties in and to the real estate involved in this cause depend upon the interpretation and construction of two similar conveyances attached hereto as `Exhibit A' and `Exhibit B' made to certain individuals as Trustees of St. Paul African Methodist Episcopal Church, Selma, Alabama, which was, at the time said deeds were executed, an unincorporated association consisting of members of a local church or religious society, and that the members of said *871 unincorporated association became incorporated on June 11, 1969, under Article 3 of Chapter 7, Title 10, Code of Alabama 1940 (Recompiled 1958), with its corporate name specified to be St. Paul Methodist Church of Selmont, a Defendant and Counter-Plaintiff in the present cause; and,
It further appearing to the Court from the words and language used in the aforesaid deeds, from existing statutes applicable thereto (Sec. 126(1) and 126(2), Title 10, Code of Alabama, 1940 (recompiled 1958)), and also from the testimony introduced at the trial of this cause, that the parties to the aforesaid deeds intended that the legal title to the real estate conveyed therein should vest in the trustees named as grantees therein free from any regulation and control of the Plaintiffs in this cause, insofar as the management and control of said real estate was concerned, and that upon the incorporation of the members of the aforesaid unincorporated association with its corporate name specified as St. Paul Methodist Church of Selmont, the legal title to said real estate vested in said last named corporation free from any regulation and control of the Plaintiffs in this cause insofar as the management and control of said real estate is concerned.
It is, therefore,
ORDERED AND ADJUDGED by the Court as follows:
1. That judgment be and the same is hereby entered and declared in favor of the Defendants (Counter-Plaintiffs) and against the Plaintiffs (Counter-Defendants) in this cause.
2. That the title to the real estate described in the deeds involved in this action, namely, deed dated September 1, 1955, made by the Attorney General of the United States of America, Washington, D. C., party of the First Part, to Oscar Durant, et al, as Trustees of St. Paul African Methodist Episcopal Church, Selma, Alabama, parties of the Second Part, and deed dated October 15, 1955, made by Frederic D. King and his wife, Eola F. King, as parties of the First Part, to Oscar Durant, et al. as Trustees of St. Paul African Methodist Episcopal Church, Selma, Alabama, as parties of the second part, which deeds are recorded in the Probate Office of Dallas County, Alabama, in Book 475 at Page 504 and in Book 475 at Page 507 respectively, vested upon the execution and delivery of said deeds in the trustees named in said deeds for the use and benefit of the members of St. Paul African Methodist Episcopal Church, Selma, Alabama, an unincorporated church or association, and that upon the incorporation of the members of said unincorporated church or association with the corporate name of St. Paul Methodist Church of Selmont on June 12, 1969, the legal title to said real estate vested absolutely and in fee simple in said corporation, the Defendant, St. Paul Methodist Church of Selmont, and that thereupon said corporation became and shall remain a distinct and independent church corporation, free from the regulation and control of the Plaintiffs or either of them or any other higher church body, denomination or other organization with which it was then associated or affiliated insofar as the management, control, disposition, or alienation of said real property is concerned.
In its appeal from this order the plaintiff contends that the trial court's findings are contrary to the unambiguous language of the two deeds. Thus he maintains that the only interpretation which can be given to the language of the granting and habendum clauses is that they described the grantees to be and thus the grantor intended the grantees to be, holding in trust for the African Methodist Episcopal Church in the United States of America.
Of course, were the language contained in these deeds crystal clear in their references to the grantees, there would be nothing to construe; the only option open to the court would have been to give force to those plain terms. Accord, Hall v. Long, 199 Ala. 97, 74 So. 56 (1917). But that is not the situation here. It is perfectly clear *872 that these granting clauses refer to certain persons "`as trustees of St. Paul African Methodist Episcopal Church, Selma, Alabama.'" "On the other hand, the habendum clauses recite "unto the parties . . . for the use of the members of the African Methodist Episcopal Church in the United States of America. . . ." It is obvious that this language used in the respective clauses is not the same and that being the case, this language had to be interpreted, or construed, to determine the identities of the parties to which it referred.
On the point of the construction to be given this language, the plaintiff asserts that the language of the deeds clearly establishes that the persons named in the granting clause as trustees were to hold title for the A.M.E. Church in the United States of America. This interpretation, plaintiff maintains, is required by the language used in the habendum clause, I. e., "for the use of the members of the African Methodist Episcopal Church in the United States of America, according to the rule and discipline of said Church. . . ." This results, it argues, because the A.M.E. Church Discipline required the trustees of the locally unincorporated St. Paul A.M.E. Church, upon incorporation, to transfer property held by them as trustees to St. Paul A.M.E. Church, Selma, when it was incorporated. Moreover, the plaintiff points to the A.M.E. Discipline for the requirement that the habendum clauses in deeds to its churches contain the habendum clause we have quoted above. On that point we are referred to a copy of the 1968 Discipline of the A.M.E. Church which, though admitted into evidence as an exhibit, is not controlling on the requirements of that Discipline in 1955.
There is evidence establishing that the language of the habendum clause was taken from the then current A.M.E. Discipline, however. The lawyer who prepared both deeds testified that one of the two members of the congregation who came to see him furnished him the names of the trustees and also brought him a Book of Discipline and "pointed out a clause" to be in the deed. Whereupon he inserted that habendum clause in both deeds. He testified further, however, that "that clause" (the reference contained in the habendum clause) was not in the granting clause.
It is axiomatic, as the plaintiff maintains, that a deed is to be construed by considering the entire instrument in order to give effect to the grantor's intent, and arbitrary rules of construction will not be resorted to when that intent can be gleaned from the entire instrument. Kettler v. Gandy, 270 Ala. 494, 119 So.2d 913 (1960); Hardee v. Hardee, 265 Ala. 669, 93 So.2d 127 (1957). As we have noted previously, however, because of the different language used in the granting and habendum clauses, we disagree with the plaintiff on the effect of that language. The plaintiff maintains that the plain meaning is that the named trustees held title for the national church. But the express language used in the granting clause furnishes a different inference, that those trustees held title for the local church. This difference rendered the language of the deeds as a whole ambiguous, and thus enabled the trial court to ascertain the intent of the grantors by considering the surrounding circumstances at the time the deeds were executed. Lietz v. Pfuehler, 283 Ala. 282, 215 So.2d 723 (1968); Brown v. Huckabaa, 264 Ala. 660, 89 So.2d 180 (1956).
Those surrounding circumstances included the fact that the local congregation, St. Paul A.M.E. Church, Selma, was an unincorporated church or association (it was not incorporated under Title 10, Alabama Code (Recomp.1958) until June 12, 1969). Additionally, the members of this local congregation affiliated ecclesiastically with the A.M.E. Church, U. S. More background was furnished by the three witnesses who testified: the then pastor of the local church, a former member, and the lawyer who prepared the deeds.
The former pastor testified to the connection with the national church, and that he obtained a lawyer to work with him to acquire the land; that he took the Discipline of the A.M.E. Church to that lawyer, referring him to the section on deeds, and *873 that "to his knowledge" the deed was prepared in accord with the Discipline and his instructions. On cross-examination he stated that he didn't contact the Attorney General, and did not know about the "King (the local grantor) deed," but that the lawyer had contacted the Attorney General.
The former member testified that he had been a trustee of St. Paul A.M.E. Church in Selmont; that he had gone to see Mr. Gamble (the lawyer); that The Reverend Lowe, who accompanied him, "passed" the Discipline to Mr. Gamble, but the witness did not know what was said. He stated that the local church continued to send money to the Annual Conference and remained a part of the national church after the property was acquired.
The lawyer who prepared the deeds testified that King, the owner of an undivided one-half interest in certain real property (of which this one-acre tract was a part) employed him in 1955 to dispose of it; that examination of the title disclosed that the church, which had been there "for years and years," did not have title to the land, although the local congregation had built and maintained the church. He had considerable contact with this grantor, and was instructed by the grantor to prepare a deed to give the local congregation the legal title to the church property, and also instructed to "take it up with the alien property custodian to see if they would likewise convey their undivided one-half interest as a deed of gift." After obtaining that consent, he prepared the two deeds. He obtained the names of the trustees from Mr. Durant (the member who visited him with the pastor), and put in each deed an habendum clause verbatim from a Book of Discipline brought to him. On cross-examination he stated that ". . . in the Granting Clause I did not mention any trust or any conveyances to any trust in favor of any higher body or affiliated body." He amplified the reason for this difference:
Q Why is it, Mr. Gamble, if the testator expressed to you, and I think you testified he did, and that you understood him to intend to give this property to the local folks, as opposed to the National Church, why wasn't the deed simply drawn to do that directly? Why did you go the long way and mention the national body at all?
A Because that person came inI suppose it was a pastorMr. Durant brought the names of the trustees of the local church. He asked they be put in the deed. I didn't put it in the Granting Clause.
Q Had he requested it to be in the Granting Clause, you would have had some objection?

A I sure would. I imagine I would, because I knew what my instructions were. (emphasis added)
The apparent conflict respecting the identities of the grantees as manifested by the terms of the granting and habendum clauses was, as we have stated, one which the surrounding circumstances, including the grantor's intent, would resolve.
If there be apparent conflict between the granting and habendum clauses of deeds, the rule of construction is to harmonize, if possible, with the consistent and expressed intent of the parties; if this cannot be done, the first and granting clause will control. Lowery v. May, 213 Ala. 66, 71, 104 So. 5 (1925).
In resolving this conflict, the trial court had before it evidence upon which it could have reasonably found that the grantors' intent was to convey this real property to the local congregation. The evidence shows that those were the instructions given to the lawyer-draftsman by the owner of one of the undivided interests, King, and consented to by the other, the Attorney General. The fact that at the time of the conveyance the local church was an unincorporated association is not significant in that connection; the point is that the grantors' intent could be found not to have involved the national church body. As a matter of law, because the deeds granted the property to the trustees of a then unincorporated association, the trustees themselves and their successors held the legal title for the "beneficiary class," the congregation. Street v. *874 Pitts, 238 Ala. 531, 192 So. 258 (1939). Those individuals as trustees continued to hold the legal title in trust until the local church association became incorporated in 1969, at which time the incorporated local church succeeded to the benefits of that trust. Tit. 10, § 126(1), (2), Alabama Code (Recomp.1958) (now Code of 1975, § 10-4-22).
The case was heard by the trial court ore tenus. That court found from the evidence that the intent of the parties to these conveyances was to convey this property to the "trustees named as grantees therein free from any regulation and control of the Plaintiffs. . . ." His findings and conclusions thereon are to be given the same weight as a jury verdict, and unless they are palpably wrong will not be disturbed. Goodall v. Ponderosa Estates, Inc., 337 So.2d 726 (Ala.1976); Lott v. Keith, 286 Ala. 431, 241 So.2d 104 (1970). Under this evidence we cannot conclude that those conclusions are palpably wrong.
Accordingly, the judgment of the trial court must be, and is, affirmed.
AFFIRMED.
BLOODWORTH, MADDOX, ALMON, SHORES and EMBRY, JJ., concur.
TORBERT, C. J., and FAULKNER and JONES, JJ., dissent.
TORBERT, Chief Justice (dissenting):
I respectfully dissent. I do not agree with the majority that the deed was ambiguous.
This court in Kettler v. Gandy, 270 Ala. 494, 496-97, 119 So.2d 913, 915 (1960) stated:
The real inquiry in construing the terms of a deed is to ascertain the intention of the parties, especially that of the grantor, and if that intention can be ascertained from the entire instrument, including its several parts, resort to arbitrary rules of construction is not required. And it is the duty of the court under this rule of construction to reconcile the terms of the instrument, if that may reasonably be done, to avoid a repugnancy in its provisions or terms. Hardee v. Hardee, 265 Ala. 669, 93 So.2d 127; Henry v. White, 257 Ala. 549, 60 So.2d 149; Stratford v. Lattimer, 255 Ala. 201, 50 So.2d 420; Gamble v. Gamble, 200 Ala. 176, 75 So. 924; Dickson v. Van Hoose, 157 Ala. 459, 47 So. 718, 19 L.R.A.,N.S., 719.
From an examination of the entire instrument including a consideration of the granting and habendum clauses taken together, the grantor's intent clearly is to create a trust "for the use of the members of the African Methodist Episcopal Church in the United States of America, according to the rule and discipline of the church." The language in the granting clause merely identifies the trustees and the capacity in which they then served; it does not establish a trust for the benefit of the local church. The critical language is "and [fourteen named individuals], as trustees of St. Paul African Methodist Episcopal Church, Selma, Alabama, as parties of the second part . . ." not as trustees for St. Paul African Methodist Episcopal Church. Thus, the granting clause does not provide for trust beneficiaries different than those named in the habendum clause.
Accordingly, the granting and habendum clauses can be reasonably reconciled to avoid a repugnancy, as is our duty to do if possible, and the intention of the grantor can be ascertained from the four corners of the instrument. I would hold that since there was no ambiguity and the intention of the grantor was to create a trust for the members of the national church, consideration of the surrounding circumstances was erroneous. Therefore, I would reverse and remand.
FAULKNER and JONES, JJ., concur.