This is an appeal from a judgment on a counterclaim filed by Zion Hill Methodist Church, Inc. ("Zion Hill"), against the African Methodist Episcopal Zion Church in America ("AME Zion"). AME Zion, seeking a judgment declaring that AME Zion owns the property and the building where the Zion Hill church is located, filed a complaint against Zion Hill. Zion Hill filed a counterclaim asserting that it, not AME Zion, owned the property and the building. The jury returned a verdict for Zion Hill. The trial court, in its order of final judgment for Zion Hill, made a finding that Zion Hill was not in a hierarchal relationship with AME Zion in respect to property matters. AME Zion raises issues concerning the trial court's denial of its motions *Page 225 
for summary judgment, directed verdict, and judgment notwithstanding the verdict. AME Zion also challenges the constitutionality of Ala. Code 1975, § 10-4-22.
Zion Hill is a church in Fosters, Alabama. Since approximately 1908, it has been associated with the national religious denomination AME Zion. In 1985 a majority of the members of what was then Zion Hill AME Zion Church voted to disassociate from the national organization and become Zion Hill Methodist Church. Zion Hill wrote AME Zion Bishop J. Clinton Hoggard a letter stating Zion Hill's intent to disassociate. In the same letter Zion Hill unilaterally declared itself a "local church with no responsibilities, liabilities, or connections" to AME Zion. AME Zion wrote a letter to Zion Hill that both accepted the notice of disassociation and also requested that the members of Zion Hill no longer interested in being associated with AME Zion leave the premises. These Zion Hill members refused to leave the property, and on March 5, 1986, AME Zion filed a complaint against Zion Hill.
The amended complaint, after all but one count had been struck by the trial court, asked the court to declare AME Zion the equitable owner of the property by virtue of a clause contained in the AME Zion Discipline, a set of rules and regulations that AME Zion members agree to follow. Zion Hill filed an answer, which contained a counterclaim for the property. AME Zion filed two motions for summary judgment, which the trial court denied; the trial court also denied AME Zion's motion for a directed verdict made at the end of Zion Hill's case. The jury returned a verdict for Zion Hill, and the trial court entered judgment on the verdict. In the trial court's order of judgment, it found that there was no hierarchal relationship between AME Zion and Zion Hill concerning the property. AME Zion moved for a judgment notwithstanding the verdict, and the trial court denied this motion as well.
We note, in making our decision, that in cases involving religious orders the civil courts cannot adjudicate disputes concerning spiritual or ecclesiastical matters, but, nevertheless, can resolve disputes concerning property rights. Trinity Presbyterian Church of Montgomery v.Tankersley, 374 So.2d 861 (Ala. 1979), cert. denied445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). However, the First Amendment to the United States Constitution prohibits resolving property disputes on the basis of religious practice and doctrine. Jones v. Wolf, 443 U.S. 595,99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Alabama courts must use "neutral principles of law" in adjudicating church property cases, Tankersley, supra, at 866, and deeds, state statutes concerning the holding of church property, and a church's constitution are proper subjects that courts can consider. Jones, supra.
AME Zion's first issue is whether the trial court erred by denying its motion for judgment notwithstanding the verdict. This Court, reviewing the jury verdict, must review the record in a light most favorable to Zion Hill. Pate v.Sunset Funeral Home, 465 So.2d 347, 350 (Ala. 1984). A jury's verdict is presumed correct and will not be disturbed unless plainly erroneous or manifestly unjust. Id.
AME Zion presented evidence generally to show two things: (1) that AME Zion is a hierarchal national denomination; and (2) that Zion Hill's association with AME Zion should be governed by the AME Zion Discipline. AME Zion's evidence is uncontroverted that AME Zion is a hierarchal national denomination; however, the evidence concerning AME Zion and Zion Hill's relationship is the basis of contention for the entire lawsuit.
The evidence indicates that the property that is the subject of this lawsuit was given to the black community in Fosters for a Methodist church. No one ever executed or recorded a deed for the original land grant, and no one knows when the original church building was built. In approximately 1908, the members of the Zion Hill Church joined the national AME Zion denomination, and the national denomination stated in its 1912 reports that Zion Hill had joined AME Zion. Over the next three-quarters of a century, Zion Hill remained associated with AME Zion. *Page 226 
The evidence indicates that AME Zion sent ministers, who were accepted by Zion Hill during the entire period until 1985, when the majority of Zion Hill's members voted to leave the national denomination. Several AME Zion ministers testified that for decades Zion Hill had been known in the community surrounding Zion Hill as an AME Zion Church. Former Zion Hill pastor Eddie Cox testified that an AME Zion bishop sent him to Zion Hill; he also testified that while he was Zion Hill's minister he conducted funerals, baptized infants and adults, and conducted marriages, all according to the rules and regulations of the AME Zion Discipline.
Uncontroverted testimony at trial indicated that Zion Hill had financial ties with the national denomination. Zion Hill consistently paid AME Zion the apportionments AME Zion requested. On the other hand, AME Zion gave Zion Hill financial assistance. In 1980 Zion Hill asked Bishop Hoggard to write First National Bank of Tuskaloosa about a $6,000 loan because the bank would need Hoggard's "seal of approval" of the loan. Furthermore, as a trustee of Zion Hill at that time stated, "[the pastor said] . . . in case we couldn't meet the approval of the payments, the bishop might help us out with the payments." The bishop wrote a letter approving the mortgage, but the application for this loan was never completed; Zion Hill borrowed $12,000 in 1983 and did not request this guarantor-type intervention by the bishop.
Zion Hill's own actions indicate affiliation with the national church. The local church authorized an attorney to write AME Zion to inform AME Zion that Zion Hill had left the denomination. There was no evidence explaining why Zion Hill would leave the denomination if it did not in the first place belong to the denomination. Rather, indeed, the evidence shows that Zion Hill was committed to AME Zion to the extent that it used the name AME Zion on its printed checks, it used AME Zion literature, and it used AME Zion hymnals. Confronted with all this evidence, Zion Hill argues it was in the denomination "spiritually and financially," but not in regard to property.
The AME Zion Discipline is a book containing the rules and regulations of the AME Zion denomination. Since at least 1884, the Discipline has contained this provision relating to local church property:
 "In trust, that said premises shall be used, kept, maintained, and disposed of as a place of divine worship for the use of the ministry and membership of the African Methodist Episcopal Zion Church in America; subject to the discipline, usage and ministerial appointments of said church as from time to time authorized and declared by the General Conference of said church, and the Annual Conference in whose bounds the said premises are situated."
The Discipline is printed every four years. This clause regarding church property was added in 1960:
 "Section One, in deeds and conveyances previously executed, shall no way excuse a local church from, or release it from its African Methodist Episcopal Zion Church connectional responsibilities. Nor shall it absolve a local congregation or Board of Trustees of its responsibility to the African Methodist Episcopal Zion Church, provided that the intent and desire of the founders and or the later congregations and Board of Trustees is shown by any or all of the following indications:
 "(a) The conveyance of the property to the trustees of the local African Methodist Episcopal Zion Church or any of its predecessors;
 "(b) The use of the name, customs, and policy of the African Methodist Episcopal Zion Church in such a way as to be thus known to the community as a part of this denomination;
 "(c) The acceptance of the pastorate or ministers appointed by a Bishop of the African Methodist Episcopal Zion Church, or employed by the Presiding Elder of the District in which it is located.
 "This provision is solely for the benefit of the grantee and the grantor reserves no right nor interest in said premises." *Page 227 
The Discipline is available both to any delegates to the AME Zion General Conference, a quadrennial national meeting, and to any members of the local church, who may purchase one from the AME Zion publishing house. Each AME Zion minister is supposed to have a Discipline and to make one available to the church members.
Statements by witnesses favoring Zion Hill indicate that members of the Zion Hill Church knew of the AME ZionDiscipline and knew that AME Zion members had agreed to go by the rules and regulations of the denomination. For example, AME Zion called T.J. Paulk, a trustee of Zion Hill, as an adverse witness. Paulk has been a member of Zion Hill since approximately 1933, and he testified that the rules and regulations of the church had been contained in theDiscipline for as long as he could remember. He also indicated that whenever a new member joined the church, the pastor read the "rules and regulations" to the new member. In relation to this testimony, AME Zion points out that theDiscipline, from 1884 through today, has required that each prospective member of the AME Zion Church be asked, "Will you cheerfully be governed by the rules of the African Methodist Episcopal Zion Church. . . . ?" To become a member, the individual must answer, "I will."
Houston Murray, another trustee of Zion Hill, stated that he knew the custom in joining the church was to agree to be bound by the rules and regulations of the denomination and that in the 43 years he had been a member all the people he could remember joining agreed to be bound by the rules and regulations of the church. Murray said that while he knew AME Zion had rules and regulations and knew theDiscipline existed, he had never read theDiscipline. Murray also stated that he had seen theDiscipline in the pastor's office.
Fred Mayweather, until 1983, was presiding AME Zion elder of the conference in which Zion Hill is located; a presiding elder is approximately equal to a president of the conference. Mayweather, testifying for AME Zion, stated that he had known Zion Hill "close up" since 1946, when he was appointed presiding elder. According to Mayweather, the trustees of Zion Hill had told him they did not have a deed to the property; however, they had also always added that the property was deeded to AME Zion, according to their records.
Zion Hill presents arguments to rebut the evidence favoring AME Zion. Zion Hill argues that because the church did not execute a deed to AME Zion, as the AME ZionDiscipline requires, the local church's association with AME Zion did not include or affect property rights. This argument, in effect, states that because Zion Hill broke the rules of the Discipline, Zion Hill should be immune from those rules. If Zion Hill had for the past 75 years totally ignored and disregarded the Discipline, with no concern whatsoever for the rules and regulations of AME Zion, then perhaps its argument would be comprehensible. But Zion Hill's argument, given the fact situation in this case, is illogical. Zion Hill, with a similar argument, claims that its obtaining a $12,000 loan in a manner that violated theDiscipline, indicated that its association with AME Zion did not include or affect property rights. We do not find either of these arguments convincing.
Of the remainder of the evidence that Zion Hill produced, its best evidence that the property belongs to it comes from the cross-examination of AME Zion Bishop Hoggard. Bishop Hoggard stated substantially that Zion Hill may
never have intended to transfer the property to AME Zion; the statement is equivocal even when taken in the best possible light for Zion Hill. Without regard to whether the jury was convinced by this testimony, we hold that Zion Hill need not have intended to deed the property to AME Zion for the transfer of the property to have occurred. Zion Hill has been a member of AME Zion for three-quarters of a century, by an association that both the national denomination and the local church acknowledge. For the entire time, the AME ZionDiscipline provided that the Zion Hill property be held for AME Zion by the local church. Individuals who have been members of Zion Hill the *Page 228 
longest acknowledge that, for as long as they can remember, everyone who became a member of Zion Hill promised to abide by the rules and regulations of the AME Zion denomination. Zion Hill cannot now sever the relationship between AME Zion and itself and unilaterally declare that obligations incumbent upon itself because of three-quarters of a century of association do not exist. Zion Hill's choice to join AME Zion means it is obligated to obey all the rules and regulations its members promised to uphold, not just the rules and regulations they prefer; at least in regard to property disputes, the AME Zion Discipline binds Zion Hill.
Because we resolve this case on other grounds, we do not address AME Zion's challenge to the constitutionality of Ala. Code 1975, § 10-4-22. By not addressing this challenge, we do not mean to imply either that the section is constitutional or that the section is unconstitutional.
AME Zion presented overwhelming evidence of the association between it and Zion Hill. The jury's verdict is contrary to the evidence and is erroneous. The trial court's finding that Zion Hill "was not in a hierarchal relationship with [AME Zion] with respect to property matters" is reversible error.
The judgment is reversed and the cause is remanded for the trial court to enter a judgment declaring the African Methodist Episcopal Zion Church in America, Inc., to be the equitable owner of the property and building by virtue of the property clause contained in the AME ZionDiscipline.
REVERSED AND REMANDED.
JONES,* ALMON, SHORES,* HOUSTON, and STEAGALL, JJ., concur.
* Although Justices Jones and Shores did not sit at oral argument, they have studied the record and listened to the tapes of oral argument.