On Application for Rehearing

YATES, Judge.
The opinion of May 28, 1999, is withdrawn, and the following is substituted therefore.
This appeal involves a property dispute between the Central Alabama Conference of the African Methodist Episcopal Zion Church in America (“AMEZ Church”) and the congregation of the Elwood Church of Tyler (“Elwood Church”),[1] located in Dallas County. The trial court entered a judgment declaring the Elwood Church the owner of the real property and build *1014 ings where the church is located. The AMEZ Church appealed. We affirm.
In 1994, the entire congregation of the Elwood Church voted to withdraw its association with the AMEZ Church. Subsequently, on October 4, 1994, the Elwood Church filed its articles of incorporation.
On July 27, 1995, the AMEZ Church sought a temporary restraining order (“TRO”) against the trustees of the Elwood Church to prohibit them from using the church for any purpose and from going onto the church property for any reason. The AMEZ Church claimed title to the property, based on an 1895 deed and on The Book of Discipline of the AMEZ Church (the “Discipline”). The Discipline provides that all property used as a place of worship for its members shall be deeded to the AMEZ Church and, according to the AMEZ Church, the property had been deeded to it in 1895.
The trial court, without holding a hearing, granted the TRO on the same day the petition for it was filed. On August 14, 1995, the trustees moved to dissolve the TRO. The trial court held a hearing on September 15, 1995, and, subsequently, issued an order dissolving the TRO, allowing the trustees and the congregation use of the church and property pending a final hearing. The parties attempted mediation, but were unsuccessful.
On September 8,1998, following ore ten-us proceedings, the trial court found as follows: The land occupied by the Elwood Church building is located in a rural community and has a value of $4,600, including improvements. The court found that the congregation “has always been made up [predominately of] black persons” and that it had, for many years, been associated with the AMEZ Church. However, in 1994, the entire congregation of the Elwood Church withdrew its association with the AMEZ Church, and it later filed articles of incorporation. The property upon which the church was built was conveyed through two separate deeds — one from R.H. Lanford, dated February 28, 1888, and the other from M.R. Dudley, dated November 1, 1895. These conveyances were made by white plantation owners to the local black congregation, and neither of the grantors in those deeds had any connection or association with the AMEZ Church.
The trial court further found:
“In neither of the deeds in question is it ‘clearly stated’ that the property is deeded to any higher church body, denomination, or organization. Indeed, in the Lanford deed, no mention at all is made to a higher church body. The deed is to the trustees of the ‘Elwood Church.’ In the Dudley deed, the granting clause makes no mention of any church other than the trustees of the ‘Elwood Church’; however, the haben-dum clause does mention the ‘African Methodist Episcopal Church of Zion’ (which is incidentally not the plaintiff in this case). Therefore, the Dudley deed is conflicting and it is not ‘clearly stated’ in the deed that the property would belong to any higher church body or denomination. In addition, if there is a conflict between the granting and [ha-bendum] clauses of deeds, the first and granting clause will control. Lowery v. May, 213 Ala. 66, 71, 104 So. 5 (1925); African Methodist Episcopal Church v. St. Paul Methodist Church [of Selmont, 362 So.2d 868 (Ala.1978) ]. The AMEZ Church has no claim to any property conveyed in the Lanford deed, as no national church is mentioned. Since it is not ‘clearly stated’ in the Dudley deed that a national church is to hold title, any claim of the AMEZ Church to the property conveyed in that deed must also fail.”
The court concluded that upon its disassociation with the AMEZ Church and its subsequent incorporation, the Elwood Church became the owner of the property upon which the church building is located.
Although civil courts cannot resolve disputes concerning spiritual or ec *1015 clesiastical affairs, the courts can resolve disputes concerning civil or property rights. Trinity Presbyterian Church of Montgomery v. Tankersley, 374 So.2d 861 (Ala.1979), cert. denied, 445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). However, the First Amendment prohibits a court’s resolving property disputes on the basis of religious practice or doctrine. Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).
In Trinity Presbyterian, Alabama courts adopted the “neutral-principles-of-law” approach applied in Hull, 393 U.S. at 449, 89 S.Ct. 601. Under this approach, the court will consider, in secular terms, the language of the deeds, the charter of the local church, any applicable state statutes, and any relevant provisions contained in the discipline of the national church, as a means of resolving the dispute. Id.
The AMEZ Church argues that the Elwood Church is bound by the Discipline and that the Discipline mandates a finding that the property belongs to the AMEZ Church. In support of its position, the AMEZ Church cites African Methodist Episcopal Zion Church in America, Inc. v. Zion Hill Methodist Church, Inc., 534 So.2d 224 (Ala.1988). In Zion Hill, the local church had withdrawn from its association with a national church. The court based its decision regarding the issue of ownership of the property where the church building was located solely on whether the local church had been associated with the national church and whether it had agreed to be bound by the national church’s discipline. The supreme court found that the local church had agreed to the national church’s rules and held that the national church was the equitable owner of the property. However, Zion Hill did not involve a deed, and the court did not discuss the effect a deed would have had on the dispute.
In Haney’s Chapel United Methodist Church v. United Methodist Church, 716 So.2d 1156 (Ala.1998), the national church sued to quiet title when a majority of the local church congregation passed a resolution to withdraw from the national church. The local church had never incorporated. The discipline for the national church provided that all property held by an unincorporated local church was to be held in trust for the use of both the local church and the national church. The trial court found in favor of the national church, based on its discipline. However, the supreme court reversed, holding that the language of the deed was controlling, and not the discipline.
We now turn our attention to the deeds that allegedly conveyed the property at issue. A review of the record indicates that two deeds were introduced into evidence, which purported to convey the property upon which the church building is located. The 1888 deed from R.H. Lan-ford reads:
“I, R.H. Lanford, have this day sold to Mark Gunn, L.P. Jones, & David Gunn as trustees of Ellwood [sic] Church for church purposes and school purposes and no other purposes or privileges than those above mentioned. One acre of land on my Gunn Plantation in Dallas County bounded as follows; lying in the corner of Pleasant Hill and Benton Road and against the Old Ellwood [sic] Church or, trustee lot now owned by Mr. Sank Dudley — To have and hold for church and school purposes forever or as long as it is used for church and school purposes and it is understood that when they cease to use it for said purposes then it is to revert to R.H. Lanford or his heirs. In consideration of said one acre of land, I have received fifteen Dollars. Given under my hand and seal this first day of March, 1888.”
The 1895 deed from M.R. Dudley to “Trustees of Elwood Church” purporting to convey the same property reads:
*1016 “Know all men by these presents that for and in consideration of the sum of Ten Dollars in hand paid by Lewis Jones, Royal Shannon and David Maxwell, Trustees of Elwood Church, I do hereby sell and convey [to] the said Trustees and their successors in office the following property, [to-wit]: One (1) acre of land lying and being in the North East Corner of the Northwest quarter of Section (9) nine in Township fifteen Range 12; said land having been deeded to the M E Church South by James M. Gunn & his wife Rebecca Gunn on the 17th day of Nov. 1851 & recorded in deed book ‘P’ pages 138 & 139 Now I do hereby transfer quitclaim & convey unto the said Lewis Jones, Royal Shannon & David Maxwell, Trustees of said Elwood African Methodist Episcopal Church of Zion and their successors in office all my right, title, and interest which I hold to said property.”
In its brief, the AMEZ Church argues that the 1888 Lanford deed and the 1895 Dudley deed are conveying separate pieces of property.[2] However, the AMEZ Church failed to present this argument at the ore tenus proceedings in the court below. Certainly, if the two deeds concerned different parcels of land, this argument would have been raised at trial or in the three years before trial. Moreover, the trial court specifically found that both the 1888 Lanford deed and the 1895 Dudley deed conveyed the church property at issue. This court cannot consider an argument raised for the first time on appeal. Our review is limited to the evidence and the arguments considered by the trial court. Whatley v. Rasco, 698 So.2d 780 (Ala.Civ.App.1997), cert. denied, 698 So.2d 780 (Ala.Civ.App.1997).
The AMEZ Church goes on to argue that the 1895 Dudley deed is unambiguous and clearly conveys the land to it. It further argues that the trial court erred in finding that the granting clause, which does not mention the AMEZ Church, controls in determining the grantor’s intent. In African Methodist Episcopal Church v. St. Paul Methodist Church of Selmont, 362 So.2d 868 (Ala.1978), the supreme court affirmed the trial court’s judgment granting the local church title to the church property. In St. Paul, there were two deeds under which two grantors conveyed their interests in real property. The granting clause in both deeds referred to the “trustees of St. Paul African Methodist Episcopal Church, Selma, Alabama.” The habendum clause, which generally follows the granting portion of the deed and defines the extent of the ownership granted, in both deeds recites “unto the parties ... for the use of the members of the African Methodist Episcopal Church in the United States of America.” The national church argued that the habendum clause conveyed the property to it and, further, that its discipline required that such language be used in habendum clauses. The court held that the language used in the granting clause and the habendum clause was not the same and, therefore, that the language had to be construed. Extrinsic evidence, including testimony from a former minister and testimony from the lawyer who wrote the deeds, was used to determine the intent. Despite the rules contained in the discipline, the court held that the evidence supported the trial court’s finding that the grantors had intended to convey the property to the local church free from any control of the national church.
In the present case, there were two deeds. The 1888 Lanford deed does not mention the AMEZ Church. Instead, it refers to the “trustees” of the Elwood Church. The granting clause of the 1895 Dudley deed conveys the property to the “Trustees of the Elwood Church.” The habendum clause of the 1895 Dudley deed refers to the “Trustees of Said Elwood *1017 African Methodist Episcopal Church of Zion.” The phrase in the habendum clause upon which the AMEZ Church relies does not specifically refer to it. Instead, it refers to the “Elwood African Methodist Episcopal Church of Zion,” not a national church. Additionally, there was ample evidence presented at the ore tenus proceedings to support the trial court’s findings that both grantors, who were white plantation owners, would have wanted the local members of the congregation to own the property and not a national church with which the grantors had no connection.[3]
The AMEZ Church next argues that the trial court erred in finding that the trustees of the Elwood Church held legal title to the property for the congregation until the church incorporated under § 10-4-22, Ala.Code 1975, at which time, the court held, title passed to the church corporation. In St. Paul, 362 So.2d 868, the local church was an unincorporated association when the conveyances were made. However, it later incorporated. The supreme court in St. Paul held that “[t]he fact that at the time of the conveyance the local church was an unincorporated association was not significant in that connection; the point is that the grantors’ intent could be found not to have involved the national church body.” 362 So.2d at 873. As a matter of law, because the deeds granted the property to the trustees of an unincorporated local church association, the trustees themselves held the legal title for the beneficiary class, the congregation. Those individuals, as trustees, continued to hold the legal title in trust until the local church association became incorporated, at which time the incorporated local church succeeded to the benefits of that trust. St. Paul, 362 So.2d at 873, citing Street v. Pitts, 238 Ala. 531, 192 So. 258 (1939).
In 1994, the Elwood Church incorporated under § 10-4-22. Section 10-4-22, which is entitled “Independence of church corporations in control of real property,” states that, unless clearly stated in the deed or voted on by a majority of the adult members of the congregation, a church corporation organized under the laws of this state shall remain independent from the regulation of a higher church body “insofar as the management, control, disposition or alienation of its real property is concerned.” The trial court found that the 1895 Dudley deed did not “clearly state” that the property belonged to the AMEZ Church, and the evidence supported the conclusion that the grantors did not intend to give the property to a national church. Therefore, the trial court did not err in finding that § 10-4-22 applied and that the trustees held title to the property until the church incorporated.
Accordingly, the judgment of the trial court is affirmed.
OPINION OP MAY 28, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.

. The named defendants included Larry Crum, Mack Authur Towns, Roosevelt Crum, Sam Crum, Herman Crum, and Gary Lamar Crum, individually and as appointed officers of the Elwood Church.

. The AMEZ Church also introduced into evidence an 1851 deed, which is referred to in the 1895 Dudley deed.

. On application for rehearing, the AMEZ Church argues that there is no evidence to support the trial court’s finding that the grantors were white plantation owners; however, Herman Crum testified that the grantors were white plantation owners.